[S. F. No. 2293.    Department One. — September 25, 1901.]

C. H. JAMES, Appellant, v. E. G. LYONS COMPANY, Respondent.

ACTION UPON DRAFT — LIABILITY OF DRAWEES — WRITTEN PROMISE OF ACCEPTANCE. — An unconditional promise, in writing, to accept a draft or bill of exchange is a sufficient acceptance thereof in favor of every person who, upon the faith thereof, has taken the bill for good consideration, and a promise by the drawee, to the effect that a bill, when due, shall meet due honor, amounts to an acceptance, and renders the drawee liable in an action upon the draft, as an accepted draft, by an assignee thereof for value.

ID. — PROMISE BY SELLERS OF MERCHANDISE TO MEET DRAFTS BACK. — Where sellers of merchandise in this state, to purchasers in another state, made an agreement with them, evidenced by various letters, to assist them in meeting drafts for the price, under their understanding that the purchasers were to draw back upon the sellers for such part of the price as they could not meet upon maturity of the drafts of the sellers, on the faith of which agreement the draft in suit was made back by the purchasers, and assigned to the plaintiff for value, such agreement, interpreted in the light of all the letters evidencing it, and of a subsequent letter written and received while plaintiff held the draft, in answer to an immediate notification of the draft by the purchasers to the sellers, that the draft would be "duly protected on presentation," constitutes an unconditional promise, in writing, to accept the draft back, which renders the drawees liable thereupon to the plaintiff.

ID. — CONSTRUCTION OF CODE — GENERAL PROMISE TO MEET BILLS OF EXCHANGE. — Section 3197 of the Civil Code, making an unconditional promise, in writing, to accept a bill of exchange a sufficient acceptance in favor of every assignee for value who takes upon faith of the promise, is not to be construed as requiring that the promise, to be binding under the statute, shall relate to and describe a particular bill, or the bill sued upon. It is sufficient that it can be fairly inferred from the language of a general promise to meet bills of exchange, that it was intended to include the one upon which the action is based.

ID. — AUTHORITY FOR DRAFT — PROMISSORY WORDS IMPLIED. — The promise to accept and pay a draft is necessarily implied from words of the drawees, authorizing the draft to be made upon them.

ID. — LIMITATION OF AMOUNT AND PURPOSE — PROMISE NOT CONDITIONAL. — The fact that the purchasers were authorized to draw back for an amount needed to meet the sellers' drafts does not make their promise to meet the drafts back conditional, rather than absolute; but the limitation is merely one as to the amount and purpose for which the drafts were to be made, and the promise is absolute within those limitations.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Carroll Cook, Judge.

The facts are stated in the opinion.

Vogelsang & Brown, for Appellant.

Notwithstanding the limitation of possible shortage of funds upon which the drafts were to be drawn, the promise to accept, within such limitation, must be regarded as unconditional. (*Merchants' Bank* v. *Griswold*, 72 N. Y. 472;[1] *Bissell* v. *Lewis*, 4 Mich. 450; *Gates* v. *Parker*, 43 Me. 544; *Exchange Bank* v. *Hubbard*, 58 Fed. Rep. 530; *Monroe* v. *Pilkington*, 14 How. Pr. 250; *Putnam National Bank* v. *Snow*, 172 Mass. 569; *Whilden* v. *Merchants' etc. Bank*, 64 Ala. 32, 33;[2] *Smith* v. *Ledyard*, 49 Ala. 279; *Kennedy* v. *Geddes*, 3 Ala. 581;[3] *Burns* v. *Rowland*, 40 Barb. 368; *Ruiz* v. *Renauld*, 100 N. Y. 256, 261; *Wakefield* v. *Greenhood*, 29 Cal. 598; *Naglee* v. *Lyman*, 14 Cal. 451.) An absolute authority to draw is an unconditional promise to pay. (*Merchants' Bank* v. *Griswold*, 72 N. Y. 472.[4]) The authority need not be phrased in the form of a legal document, but may be contained in the language of mercantile correspondence. (*Ruiz* v. *Renauld*, 100 N. Y. 256, 283.)

Reinstein & Eisner, for Respondent.

The promise in writing must be to accept a particular bill. (Civ. Code, sec. 3197.) It must describe a particular bill so that it cannot be mistaken. (*Coolidge* v. *Payson*, 2 Wheat. 66, 75; *Boyce* v. *Edwards*, 4 Pet. 121, 122; *Ulster County Bank* v. *McFarlan*, 3 Denio, 558, and cases cited; *Valle* v. *Cerre*, 36 Mo. 590;[5] *Wildes* v. *Savage*, 1 Story, 27, 29; *Cassel* v. *Dows*, 1 Blatchf. 341, 342; *Von Phul* v. *Sloan*, 2 Rob. (La.) 149, 150.[6])

---

[1] 28 Am. Rep. 159.                    [4] 28 Am. Rep. 159.
[2] 38 Am. Rep. 1, and note.            [5] 88 Am. Dec. 161.
[3] 37 Am. Dec. 714.                    [6] 38 Am. Dec. 207.

GRAY, C.—This action is based on an order in words and figures as follows:—

"$325.00.                        SAN ANTONIO, Mar. 5th, 1897.

"At sight, pay to the order of D. Sullivan & Co. three hundred and twenty-five dollars, value received, and charge to account of Mayer & Adler.

"To THE E. G. LYONS Co., San Francisco, Cal."

The order was duly assigned to plaintiff, and he seeks to maintain this action, as appears from his complaint, on the theory that defendant made an unconditional promise, in writing, to accept the order, and thereby actually accepted it, under the provisions of section 3197 of the Civil Code. On the trial before the court without a jury, the plaintiff suffered a nonsuit, and thereafter took this appeal from the judgment, within sixty days after the entry thereof.

The question for determination now is, Did the defendant accept the order in suit?

The facts bearing on the question are as follows: In 1896 the defendant corporation was selling and shipping goods to the firm of Mayer & Adler, at San Antonio, Texas; and it appears that defendants collected for these goods by drawing upon Mayer & Adler for the price thereof, and then permitting Mayer & Adler to meet these drafts by drawing back on defendant for any part of the said price that the firm might not have at their command. These various drafts back and forth passed through the banking-house of the firm of D. Sullivan & Co., doing business at San Antonio. In the course of its business dealings in the matter of these sales, the defendant sent telegrams and letters to Mayer & Adler as follows: On May 12, 1896, it telegraphed, "Pay acceptance fourteenth draw back on us for what you require and send short paper." Again, on May 13, 1896, it telegraphed, "Pay our draft and draw back on us for amount need." On November 11, 1896, it wrote: "We have had occasion to discount your acceptances, amongst others, with our bank, and hope you will be in a position to meet them promptly. Should you, however, at any time find yourselves short, honor your paper and draw on us for amount you may require." These telegrams and this letter were severally shown to D. Sullivan & Co., and, on the faith of the same, said banking firm, on the several occasions mentioned, bought and paid for the drafts of Mayer &

Adler drawn upon the defendant for amounts sufficient to meet the requirements of said telegrams and letter; and it seems that these several drafts were promptly paid by the defendant on their subsequent presentation at San Francisco. Thereafter, on February 9, 1897, the defendant wrote from San Francisco to said Mayer & Adler, at San Antonio, as follows: "We must request of you again to send us your acceptances to cover invoices, Nov. 20th, $109.38; Nov. 27th, $200; Dec. 18th, $195.50, at four months. We find ourselves obliged at times to use these papers, and the unnecessary delay in forwarding same inconveniences us. We do not want to be kickers, as you seem to think we are, yet you should give our letters a little more attention. We are at all times willing to assist you in meeting these papers as per our understanding, — viz., should you find yourselves short at their maturity, to draw back on us for part of them. Hoping that you will comply with our request without further delay, we remain," etc. This letter was shown to the bank on February 17, 1897, and on the strength of it they purchased Mayer & Adler's draft on the defendant for two hundred dollars, and this draft was also thereafter promptly paid by defendant. On the 5th of March, 1897, the bank, still having defendant's said letter of February 9th in their hands, on the faith thereof purchased the draft for $325, upon which this suit is based. On the same date, — March 5th, — Mayer & Adler wrote to defendant, notifying it of the last-mentioned draft, and in due time thereafter received a reply from it, dated San Francisco, March 10, 1897, and reading as follows: "We are in receipt of your letter of the 5th. Your draft on us for $325 will be duly protected on presentation," etc. The bank forwarded the said draft to another bank for collection, but in some manner it was lost. Thereafter, on March 31, 1897, a duplicate of the draft was given by Mayer & Adler to the bank, and on the subsequent presentation of this to defendant it denied that it owed D. Sullivan & Co. anything, and refused payment on that ground. On March 27, 1897, Mayer & Adler failed in business, and became unable to pay their obligations.

We think that the letter of February 9, 1897, read and interpreted in the light of what had preceded it, as well as what followed it, contained an unconditional promise, in writing, to accept the instrument upon which the suit is based.

Section 3197 of the Civil Code reads as follows: "An unconditional promise, in writing, to accept a bill of exchange is a sufficient acceptance thereof, in favor of every person who, upon the faith thereof, has taken the bill for value or other good consideration."

The above section is, in substance, the same as the statute of 1850 of this state regarding the same subject, and under that statute, in *Wakefield* v. *Greenhood*, 29 Cal. 598, this court held as follows: "The promise by the drawee to pay the bill is, by necessary intendment, a promise to accept, just as the payment by him implies and includes, at the same time, the acceptance of the bill. In *Wynne* v. *Raikes*, 5 East, 514, which was an action brought against the drawees to charge them as acceptors of the bill, the acceptance was found in their letter, in which they said: 'We shall accept, or certainly pay, all the bills,' etc. Lord Ellenborough said that a promise to pay is an acceptance. And so in this case, the promise to pay, if so made as to bind the defendant, is to be deemed a promise to accept the bill. In an action on the bill against the drawee, who has promised to accept, he is sued as the acceptor, and the allegation in the complaint is, that the defendant accepted the bill. Such was the nature of the action and the form of the pleadings in *Coolidge* v. *Payson*, 2 Wheat. 66, which has been regarded in the United States as a leading case in respect to the liability of the drawee upon his promise to accept. (See also *Greele* v. *Parker*, 5 Wend. 414; *Parker* v. *Greele*, 2 Wend. 545; *Wilson* v. *Clements*, 3 Mass. 1.) In *Clark* v. *Cock*, 4 East, 57, Lord Ellenborough, in delivering the opinion of the court, said: 'And it has been laid down in so many cases that a promise that a bill, when due, shall meet due honor amounts to an acceptance, and that without sending it for a formal acceptance in writing, that it would be wasting words to refer to the books on this subject.' The eighth section of the statute of 1850 of this state, relative to bills of exchange and promissory notes, provides that 'an unconditional promise, in writing, to accept a bill before it is drawn shall be deemed an actual acceptance in favor of any person who, upon the faith thereof, shall have received the bill for a valuable consideration.' It thus appears that the drawee, under such circumstances, is liable to the payee or indorsee, and should be sued as the acceptor of the bill."

We cannot concur in respondent's position that the promise, to be binding under the statute, must relate to and describe *a* particular bill or *the* particular bill referred to in the complaint. It is sufficient if it can be fairly inferred from the language of the promise that it was intended to include the bill of exchange upon which the action is based. This is illustrated in the case of *Naglee* v. *Lyman*, 14 Cal. 451, wherein it was held that bills of exchange drawn in pursuance of a letter of credit authorizing the drawing of bills upon the writer to an extent named, and agreeing to accept the same, were to be treated as actually accepted by the writer of the letter. And yet the letter contained no description of any particular bills. In *Merchants' Bank* v. *Griswold*, 72 N. Y. 472,[1] a draft was held to be accepted by a certificate signed by defendant in advance of the making of the draft. The certificate is dated, and reads as follows:—

"To whom it may concern: This is to certify, that I hereby authorize Horace Loveland, as my agent, to make drafts on me, from time to time, as may be necessary, for the purchase of lumber for my account, and to consign the same to the care of P. W. Scribner & Co., Whitehall, N. Y.

"(Signed)                    A. H. Griswold."

The language of the New York statute makes use of the articles " a " and "the" exactly as they are used in our statute, for it reads: " An unconditional promise, in writing, to accept a bill before it is drawn, shall be deemed an actual acceptance, in favor of every person who, upon the faith thereof, shall have received the bill for a valuable consideration." (1 N. Y. Rev. Stats., p. 768, sec. 8.) No contention was made, in the case cited from New York, that the particular draft in suit was not described in the written promise, or was not fairly included within its terms.

The promise to accept and pay the draft is a necessary implication from the authority to draw contained in the letter of February 9th. (*Merchants' Bank* v. *Griswold*, 72 N. Y. 472.[1])

As particularly applicable to the facts of this case, we quote from *Ruiz* v. *Renauld*, 100 N. Y. 256, as follows: "But the appellant's contention is, that the language of the letter is not explicit, does not promise to accept and pay, and is ambiguous. Reading it in the light of its surroundings, it is explicit and

[1] 28 Am. Rep. 159.

unambiguous. It requests a renewal of the character and by the process which both parties understood, and plainly authorized the drafts which were made. Special promissory words were unnecessary, where the language employed sufficiently imported a legal obligation. The authority need not be phrased in the precise and formal language of a legal document. Mercantile correspondence rarely has that characteristic, and often is abbreviated, and assumes what is readily understood. It is enough, in the present case, that the defendant's letter authorized the draft when it requested the renewal which could only be made by that process, and was expected so to be made."

The New York cases *supra* also dispose of the point made by appellant, to the effect that the promise contained in the letter of February 9th was conditional upon Mayer & Adler finding themselves "short," and that they were authorized to "draw back" only for a part of the amounts due to defendant. In *Merchants' Bank* v. *Griswold*, 72 N. Y. 472,[1] language similar to this is held not to express a condition, but to be a mere limitation as to the amount and purpose for which the drafts were to be made.

The statute, in speaking of an *unconditional* promise, uses the word as it is generally used and understood in the law of contracts, and it was intended only that the promise spoken of should be free from all those limitations which are usually referred to as conditions in treatises on contracts. It was clearly not contemplated that a mere limitation as to the amount or purpose of the drafts would render the promise conditional, within the meaning of the statute. In Black's Law Dictionary such a condition is defined to be "a clause in a contract or agreement which has for it object to suspend, rescind, or modify the principal obligation." For promises similar to that involved in this case which have been held to be unconditional promises to accept, see also the following cases: *Whilden & Sons* v. *Merchants etc.*, 64 Ala. 1, at pp. 32, 33;[2] *Bissel* v. *Lewis*, 4 Mich. 450.

The last case cited above also illustrates that it is not necessary that the written promise to accept should be addressed to the party who seeks to take advantage of it, but it is sufficient if it be addressed to the maker of the draft or bill of exchange,

---

[1] 28 Am. Rep. 159.     [2] 38 Am. Rep. 1, and note.

and that the plaintiff has purchased the draft on the faith of it, as in this case.

We are aware that there are cases which take a view of the questions involved, opposed to those hereinbefore expressed, but we prefer to stand by the cases cited herein as presenting the true rule governing the question.

The evidence, without conflict, shows that the draft in suit was within the limits as to amount and purpose contemplated in the promise of defendant, and that such promise was an unconditional promise, within the meaning of said section 3197 of the Civil Code.

The court therefore erred in granting the nonsuit.

We advise that the judgment be reversed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed.          Van Dyke, J., Garoutte, J., Harrison, J.

Hearing in Bank denied.