[S. F. No. 3236.    Department Two.—May 31, 1905.]

## C. H. JAMES, Respondent, v. THE E. G. LYONS COM-PANY, Appellant.

NEGOTIABLE PAPER—DRAFTS—WRITTEN PROMISE OF ACCEPTANCE—EVI-DENCE — EXPLANATORY WRITINGS. — Where a written promise to accept drafts refers to a previous understanding, evidence of pre-vious telegrams and a letter, which remove any doubt as to the exact meaning of the language employed in such promise, were admissible for the purpose of fully showing the terms of the con-tract and the extent of the obligation assumed therein.

ID.—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT—LAW OF CASE.—Where upon a previous appeal a judgment of nonsuit was reversed for sufficiency of the undisputed evidence to support a verdict, and the evidence is the same upon a second appeal by the other party, assigning insufficiency of the same undisputed evidence to support the verdict, its sufficiency is the law of the case.

ID.—INSTRUCTION BASED UPON LAW OF THE CASE.—An instruction to the jury based upon the law of the case as to the legal effect of the evidence was properly given.

ID.—CONFLICTING INSTRUCTION AS TO PROVINCE OF JURY—APPELLANT NOT PREJUDICED.—A conflicting instruction allowing the jury to judge of the legal effect of the evidence, their verdict being the same, whichever instruction was followed, did not materially mis-lead the jury; and any error therein being favorable to the appel-lant, he was not prejudiced thereby, and cannot complain thereof.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order deny-ing a new trial.    Carroll Cook, Judge.

The facts are stated in the opinion of the court.

M. S. Eisner, and Reinstein & Eisner, for Appellant.

Vogelsang & Brown, for Respondent.

LORIGAN, J.—C. H. James, the plaintiff, brought this action as assignee of D. Sullivan & Co., a banking association of San Antonio, Texas, to recover from The E. G. Lyons Company of San Francisco the amount of $325 al-leged to be due on a sight-draft drawn at San Antonio, March 5, 1897, by the firm of Mayer & Adler of that city, upon the defendant, and in favor of the assignors of plaintiff.

The plaintiff alleged that during the month of February, 1897, the defendant in writing made an unconditional promise to accept and pay said draft, and thereby accepted the same, and that on the faith of such promise the assignors of plaintiff purchased it from Mayer & Adler for value; that said draft was duly presented to defendant and dishonored.

The trial was had before a jury, a verdict rendered for plaintiff in the amount sued for, and from the judgment and an order denying its motion for a new trial defendant appeals.

As grounds for a reversal, it is insisted that the evidence is insufficient to justify the verdict; that the court erred in its rulings as to the admission of evidence, and misdirected the jury in its instructions.

This is the second time this case has been here. The first trial was had before the court below without a jury, and the plaintiff suffered a nonsuit. Upon appeal the judgment of nonsuit was reversed. (*James* v. *E. G. Lyons Co.*, 134 Cal. 189, 66 Pac. 210.)

The last trial, from which this appeal proceeds, was had before a jury, and an examination of the record on both appeals shows that in each trial in the lower court the evidence presented was substantially and, it may be said, essentially the same. On both trials the only evidence offered was on the part of plaintiff, and consisted of the deposition of one Herman Brendel, .cashier of the said bank of D. Sullivan & Co..

While the first point urged on this appeal is, that the evidence is insufficient to warrant the verdict, we deem it proper to dispose of one of the other points before discussing that one.

1. It is insisted that the court erred in permitting certain evidence to go before the jury. The evidence in this case, aside from what is claimed to have been improperly admitted, shows that in 1896, and the early part of 1897, the defendant corporation was selling and shipping goods to the firm of Mayer & Adler at San Antonio, who were its customers. The goods were purchased on credit, and drafts for the invoices were accepted by Mayer & Adler, the acceptances becoming due at the expiration of the terms of credit upon which the goods were sold. These acceptances were forwarded by defendant for collection when due, and the collections were

made through the bank of D. Sullivan & Co., who were the
bankers of Mayer & Adler. The bank, in the course of busi-
ness, purchased from Mayer & Adler their drafts whenever
written authority to draw on responsible persons was pro-
duced to it. On February 17, 1897, Mayer & Adler de-
livered to the said bank a letter dated February 9, 1897,
written by the defendant corporation from San Francisco to
said Mayer & Adler at San Antonio, the contents of which
were as follows:—

"We must request of you again to send us your acceptances
to cover invoices November 20th, $109.38; November 27th,
$200; December 18th, $195.50—at four months. We find our-
selves obliged at times to use these papers, and the unneces-
sary delay in forwarding the same inconveniences us. We
do not want to be kickers, as you seem to think we are, but
you should give our letter a little more attention. We are
at all times willing to assist you in meeting these papers as
per our understanding, viz.: should you find yourself short
at their maturity to draw back on us for part of them. Hop-
ing that you will comply with our request without further
delay, we remain," etc.

On March 5, 1897, said bank purchased from Mayer &
Adler the draft on the defendant in question, and it is claimed
by the plaintiff that said bank purchased it upon the faith of
said letter, and upon the unconditional promise to pay it
which, it is insisted, is contained therein. This draft was
forwarded in due course to defendant through another bank
for payment and payment refused. Before presentation, the
firm of Mayer & Adler had failed in business.

The evidence which it is claimed the court should not have
admitted consisted of two telegrams and a letter from the
defendant to Mayer & Adler, sent at different dates in 1896,
concerning drafts drawn by it on said firm in the course of
their business dealings. On May 12th it telegraphed: "Pay
acceptance fourteenth. Draw back on us for what you re-
quire and send short paper." On May 13, 1896, it again
telegraphed: "Pay our draft and draw back on us for amount
need." On November 11, 1896, it wrote: "We have had
occasion to discount your acceptances, amongst others, with
our bank, and hope you will be in a position to meet them
promptly. Should you, however, at any time find yourselves

short, honor your paper and draw on us for the amount you
may require.'' Supplementing these offers, and under objec-
tion, evidence was admitted to show that the banking firm of
D. Sullivan & Co. were shown these telegrams and the letter
about the times they were received by Mayer & Adler, and, on
the faith of them, and at about their respective dates, the
said bank bought drafts from said Mayer & Adler drawn by
that firm on defendant, as authorized therein. These drafts
were all met promptly on presentation to the defendant at
San Francisco. There were also admitted, over the same
objection, two other letters. One was a letter sent by Mayer
& Adler to defendant on the day—March 5, 1897—the draft
in question was drawn by them and purchased by the bank,
informing the defendant of their inability to meet an accept-
ance due that day in favor of defendant for $341, and stat-
ing that they were compelled ''to value back'' on defendant
for the amount, in order to protect the same; that they would
draw on defendant for $325, and requested defendant to
protect the draft. Also a letter of defendant, dated March
10, 1897, received by Mayer & Adler prior to the presentation
of the draft in question in response to their letter of March
5th, in which the following language is used: ''We are in
receipt of your letter of the 5th. Your draft on us for $325
will be protected on presentation,'' etc.

We think all this evidence was properly admitted. Its
object was to remove any doubt as to the exact meaning of
the language used in the letter of February 9th. That letter
is not as explicit as it might have been as to the extent of the
obligation which the defendant intended to assume with ref-
erence to the acceptance of drafts drawn on it by Mayer &
Adler. In fact, commercial correspondence is rarely as clear
and satisfactory as it should be. It is not usually phrased
with that particularity as to detail or with that exactness of
expression which renders the meaning of the writer clear
and unambiguous. Frequently mention is made in a general
way of prior correspondence, or negotiations or understand-
ings between the parties on the particular subject written
about, which are intended to be considered as part of the
immediate letter, or are often referred to as embracing some
of the terms of a contract which the parties are negotiating,
or as defining the extent of an obligation which is assumed.

When a writing contains such a reference to prior corre-
spondence or negotiations or understandings evidence of these
matters is admissible in an action involving the writing, for
the purpose of fully showing the terms of the contract or the
extent of the obligation.

The letter of February 9th expresses a willingness on the
part of the defendant to assist Mayer & Adler at all times
"as per our understanding" relative to acceptances in favor
of defendant which the former could not meet when due, by
authorizing said firm to draw back on it for part of them.

The contention of counsel for appellant, and the construc-
tion he claims for the letter, is that defendant only obligated
itself therein to accept the drafts of Mayer & Adler to meet
their acceptances for the three specially designated invoices
mentioned in the letter, if they should find themselves short
at their maturity; that it was not an engagement which
authorized Mayer & Adler to draw against the previous ac-
ceptance for $341 due to defendant on March 5, 1897, the
day the draft in dispute was purchased from the bank, for
the purpose of meeting that acceptance. It was therefore on
this point proper to show what the understanding mentioned
in the letter of February 9th was: whether it contemplated
only particular drafts, as claimed by counsel for defendant,
or whether it contemplated any draft accepted by Mayer &
Adler in favor of defendant, and their acceptance of which
they were unable to meet at maturity. As throwing light
upon that subject the past general course of business between
defendant and Mayer & Adler was proper to be shown, if it
had any tendency to prove an understanding relative to the
acceptance of drafts by the former when drawn upon it by
the latter, and the terms of that understanding. This the
evidence in that regard certainly tends to do, and its per-
tinency and force, as disclosing what the understanding re-
ferred to was, is apparent from the language used by the
defendant in the letter of November 11, 1896, where, in
writing about the acceptances of Mayer & Adler generally,
it is said: "Should you, however, *at any time,* find yourself
short, honor your paper and draw on us for amount you may
require."

The letter of February 9th, read in connection with the
letter of November 11th, leaves no room for any question as

to what the understanding referred to in the former was, or
the extent of the obligation assumed, and makes it quite plain
that it was intended to be and was an unconditional promise
upon the part of the defendant to accept any draft drawn by
Mayer & Adler against it, when such draft was drawn to
meet acceptances in favor of defendant, which Mayer & Adler
were unable to pay at maturity.

So we also think that the letter of March 10, 1897, written
by defendant to Mayer & Adler relative to the draft in ques-.
tion, was properly admitted in evidence for similar reasons.
It was evidence to be taken into consideration with the other
evidence just discussed, as tending to show the construction
placed by the defendant upon the letter of February 9th, and
its understanding of the extent of the obligation it assumed
therein.

2. Having disposed of the objections to the admissibility
of the evidence, we may now consider the point that the evi-
dence itself is insufficient to support the verdict. As we have
said above, this case has been tried twice, and the evidence
upon both trials is the same. On the previous appeal from
the judgment of nonsuit the sufficiency of the evidence was
the only point involved. It was there decided that the evi-
dence, being without conflict, sufficiently made out a case
which would have supported a judgment for plaintiff, and the
determination of the lower court to the contrary was set
aside. On the present appeal we are asked to again review
the same unconflicting evidence under the same objection.
This we may not do. The decision on the former appeal upon
that point is conclusive upon us. It is the law of the case.

3. Upon the instructions.

In the first instruction the jury were told to find for the
plaintiff if they believed that the assignors of plaintiff—
D. Sullivan & Co.—purchased the draft on the faith of the
letter of February 9, 1897. Under this instruction the only
matter submitted to the jury for determination was whether
or not the draft in question was purchased by defendant on
the faith of that letter, the court, in effect, instructing them
that as a matter of law the letter contained an unconditional
promise on defendant's part to pay said draft, if the purchase
was made on the faith of it. We are satisfied that the instruc-
tion was correct, and that, under the previous decision in

this case, the court properly limited the consideration of the jury to the question of the purchase of the draft.  On the former appeal in this action, and, as we have said before, upon an examination of the same unconflicting evidence as was presented on this last trial, this court said: "We think that the letter of February 9th, 1897, read and interpreted in the light of what had preceded it as well as what followed it, contained an unconditional promise in writing to accept the instrument upon which the suit is based. . . . The evidence without conflict shows that the draft in suit was within the limits as to amount and purpose contemplated in the promise of defendant, and that such promise was an unconditional promise within the meaning of said section 3197 of the Civil Code." (*James* v. *E. G. Lyons Co.*, 134 Cal. 192, 196, 66 Pac. 210.)

It will be thus seen that that decision laid down, as a matter of law, the proposition that, under the undisputed evidence in the case as there presented, the letter of February 9th contained an unconditional promise to pay the draft in question, if it was purchased on the faith of it.  That decision on a question of law arising between the parties to the action on a given state of facts became the law of the case, and controlled the lower court upon a subsequent trial of the cause, provided the same state of facts was again presented as was before this court when the decision on the former appeal was made.  And, as there is no question but that exactly the same state of facts was before the lower court upon this second trial as was reviewed on the previous appeal, and upon which the court reached the conclusion of law above declared, it was not only proper, but it was the duty of the lower court, in harmony with the law so laid down in that previous decision, to instruct the jury specifically, or in effect, that as a matter of law such letter constituted an unconditional promise to pay the draft in question, provided the jury found that such draft was purchased by plaintiff's assignor on the faith of the promise contained therein, and limiting the consideration of the jury solely to the question of such purchase.  The instruction to the jury was formulated upon this basis, and was correct.

It is further insisted, however, that this first instruction is inconsistent with a third instruction given, in which the

court did submit for the consideration of the jury whether or not the language of the promise in the letter of February 9th included or excluded the draft in question, and in which the jury were further instructed that, if they did find that the letter was intended to include said draft, and that D. Sullivan & Co. purchased the same on the faith of said letter, they should return a verdict for plaintiff.

It is insisted that these instructions were inconsistent, and that the giving of them was prejudicial to appellant. They were no doubt inconsistent, but we cannot discover how they were prejudicial to appellant. They do not lay down two different propositions of law so repugnant to each other that in the determination of a material fact in issue the jury might be misled thereby, because, as we have seen, it was not a material issue, or any issue at all, for consideration by the jury as to whether the letter of February 9th contained an unconditional promise or not. It was the settled law in the case that it did. The only material point for their determination, and the one to which the court should have alone instructed them, was whether or not the assignor of plaintiff purchased the draft in question on the faith of it, and, as they so found, returned a verdict.

Neither are the instructions contradictory to the extent that it was impossible for the jury, in considering their verdict, to know which instruction they should be guided by; neither is it impossible to determine after the verdict that they were not influenced by the erroneous instruction in returning it. The verdict is in perfect consonance with a consideration by the jury of either instruction. If they followed the first instruction, their verdict shows they found that the draft was purchased on the faith of the letter referred to. If they were guided by the third instruction, it is equally clear that they must have found that the language of the letter of February 9th included the draft in question in addition to finding that it was purchased on the faith of it.

Neither was the appellant prejudiced by the giving of these instructions. The first one correctly stated the law, and, of course, it cannot complain of that. The second one was erroneous; but the error was in favor of appellant, and it cannot complain of that which was to its advantage. Had the verdict been against the respondent, he undoubtedly would

have ground for complaint as to the inconsistency of these instructions, but the appellant is in no position to do so.

There is nothing further in this case which requires consideration.

The order appealed from and the judgment is affirmed.

McFarland, J., and Henshaw, J., concurred.