[S. F. No. 4582.    In Bank. April 2, 1908.]

In the Matter of the Estate of THOMAS BELL, Deceased.
TERESA BELL, Widow, Respondent; LOUISA J.
THOMPSON et al., Appellants.

ESTATES OF DECEASED PERSONS—FAMILY ALLOWANCE BEFORE INVEN-
TORY—CESSATION.—An order for a family allowance made before
the return of the inventory, to commence from the death of the
husband, and to continue until further order of the court, ceased
to be operative from the date of such return, and no further
payments could be allowed under such order.

ID.—PAYMENTS MADE BEFORE ORDER REDUCING ALLOWANCE—CONTEST—
APPEAL—ADJUDICATION AGAINST INTERVENING ORDER.—Where pay-
ments made to the widow at the rate of the former allowance
after the return of the inventory, prior to a subsequent order reduc-
ing the allowance were contested, and disallowed upon appeal, on
the ground that there was no intervening order, the judgment upon
appeal is an adjudication against the existence of any intervening
order.

ID.—INTERVENING ORDER NOT ENTERED—NUNC PRO TUNC ENTRY—
IGNORANCE OF WIDOW—SHOWING NOT PERMISSIBLE—RES ADJUDI-
CATA.—It cannot be shown to defeat the adjudication by this court
that there was no intervening order, that there was in fact such an
order containing the same allowance procured by the executrix from
the date of the inventory, which was not entered in the minutes
of the court, through inadvertence of the clerk, and the existence
of which was not known to the widow at the time of the former
contest and appeals, and which she afterwards as administratrix
procured to be entered nunc pro tunc, as of the date of the inven-
tory, to justify the contested payments disallowed upon appeal.

ID.—DIFFERENCE IN CAPACITY IMMATERIAL.—The fact that the widow
appeared in her individual capacity upon the former appeal, and
that the nunc pro tunc order under which the court again made
the allowances, which were disallowed upon the former appeal, was
procured by her in her subsequent capacity as administratrix, is
immaterial, and cannot affect the conclusiveness of the judgment
upon appeal, against the existence of the intervening order, which
involved only her individual rights as widow to the family allowance.

ID.—EFFECT OF JUDGMENT AS RES ADJUDICATA—NEW EVIDENCE.—A final
judgment is conclusive not only as to matters judicially determined,
but also as to every matter that might have been litigated; and the
subject-matter involved cannot be re-litigated, in a subsequent pro-
ceeding, on the ground of newly discovered evidence.

APPEAL from an order of the Superior Court of the City
and County of San Francisco directing payments to the

widow of a deceased person on her family allowance.  J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

James M. Allen, Drown, Leicester & Drown, Garret W. McEnerney, W. B. Bosley, John S. Drum, and Maurice V. Samuels, for Appellants.

T. Z. Blakeman, for Respondent.

LORIGAN, J.—This is an appeal by some of the creditors of the estate of Thomas Bell, deceased, from an order of the probate court entered in said estate on February 24, 1905, *nunc pro tunc* as of May 1, 1894, directing that a family allowance of two thousand dollars a month continue to be paid from June 17, 1893, to Teresa Bell as widow of said deceased till the further order of the court, and from a judgment and order that a balance due her under said *nunc pro tunc* order of $32,665.80 be paid her from the estate of said deceased.

A clearer understanding of the point involved in this appeal may be had by a preliminary statement of certain conceded facts.

Teresa Bell is the widow of Thomas Bell, who died October 16, 1892, and whose will was admitted to probate. On January 12, 1893, on petition of the said widow an order of court was made for a family allowance of two thousand dollars a month payable to her commencing from the date of the death of decedent till the further order of the court. The inventory in the estate was filed June 17, 1893. On October 14, 1895, the court made an order reducing the family allowance from two thousand dollars to fifteen hundred dollars a month, and on May 4, 1898, made still another order reducing said family allowance to one hundred dollars a month. On March 24, 1900, the powers of the executor of deceased—George Staacke—were suspended, subsequently revoked, and said Teresa Bell appointed special administratrix. After the order revoking his letters was on the appeal of said executor affirmed by this court (*Estate of Bell*, 134 Cal. 194, [67 Pac. 123]), said Teresa Bell was appointed administratrix with the will annexed of said estate. She

subsequently, on February 10, 1902, filed her account as special administratrix in which she credited herself with payments of family allowance which she claimed were due and unpaid between June 17, 1893, and October 14, 1895. These items of credit were contested by the creditors of the estate, on the ground that no order for a family allowance prior to the order of October 14, 1895, except the order of January 12, 1893, was made; that the latter order became null and void on the return of the inventory of the estate on June 17, 1893, and that all the installments of family allowance accruing prior to June 17, 1893, had been paid her by the executor of the estate. The probate court overruled these objections of the creditors and settled said final account of said Teresa Bell as special administratrix with said credits for family allowance after the return of said inventory and up to October 14, 1895, sustained and allowed. The creditors appealed from said order and this court reversed it, holding (and this is all that it is necessary to be stated now) that the order of January 12, 1893, directing that a family allowance be paid, ceased to operate on the return of the inventory on June 17, 1893; that as the only order made subsequent to said June 17, 1893, was the order of October 14, 1895, the court erred in crediting said Teresa Bell with all items for family allowance under the order of January 12, 1893, subsequent to the return of said inventory and prior to the order of October 14, 1895. (*Estate of Bell,* 142 Cal. 97, [75 Pac. 679].) This decision was made in February, 1904.

Immediately following its rendition said Teresa Bell filed a petition in the probate court in the matter of said estate, in which she alleged (referring to the allegations in a general way) the making of the first two orders for family allowance above referred to; that no order for such allowance was made subsequent to the filing of the inventory on January 17, 1893, until October 14, 1895; that subsequent to the filing of said inventory it was considered and believed by the petitioner, the executors, the judge of the court, the creditors of the estate, and all the parties interested, that the order of January 12, 1893, continued in full force till the making of the subsequent order of October 14, 1905; that until January 1, 1894, the executors regularly paid said

two thousand dollars a month family allowance; that after the said month, on account of delay on the part of the executors in collecting the income of the estate, petitioner agreed with said executors to allow the ready money in the estate to be used by them in paying assessments on certain stocks owned by the estate for their preservation and for the benefit of the estate, and to await payment of her allowance until a later date, when it was agreed by the executors that all her accrued allowance should be paid her; that under this arrangement only certain amounts were paid on said family allowance during the years 1894, 1895, 1896, 1897, and 1898 (the particular items for each year were set forth) aggregating $29,213.59; that she was unable to support the family on the sums paid and was compelled to borrow on the security of her separate estate certain amounts yearly (specified in the petition) aggregating twenty-five thousand dollars. It is then alleged that during all the time from June 17, 1893, to October 15, 1895, the estate was amply able to pay a family allowance of two thousand a month. The concluding allegations are that all arrears of family allowance had never been paid, but that a large portion had been paid by the executors subsequent to October 16, 1895, upon orders and judgments of the court in the matter of said estate recognizing said balance and arrears on October 14, 1895, and directing said payments to be made on account of said arrears, which said orders and judgments were not in the record upon which the supreme court decided that the order of January 12, 1893, became inoperative after June 17, 1893.

The prayer of the petition was in the alternative, that an account be taken of the family allowance paid petitioner since October 15, 1895, and chargeable by the orders and judgment of the court made subsequent to October 15, 1895, to the balance of the family allowance due petitioner from the time prior thereto, and for an order directing the payment of any balance of said sums in arrears to petitioner, or for an order allowing and fixing the family allowance of petitioner for the period of time from June 17, 1893, to October 15, 1895, at the sum of two thousand dollars a month as in accord with the purpose and intent of the court and all parties interested in said estate at that time, and after deducting the amounts paid by the executors from June 17,

1893, to October 16, 1895, for family allowance, the balance be paid to petitioner.

The appellants jointly demurred to the petition and moved to strike out certain portions of it which, being overruled, and denied, they answered, denying the allegations of the petition save as to the orders of the court for family allowance and the allegation therein as to the matter decided by this court, and averred that all amounts due said petitioner for family allowance had been paid and exceeded the sum of $88,541. As a further defense they set up the proceedings in the matter of said estate settling the account of George Staacke, the executor of the will of deceased as to the amount paid to petitioner by said executor for family allowance prior to August 6, 1898, which was contested between the creditors of the estate and petitioner; the order of settlement of said account by the probate court about January 5, 1900, and an appeal to this court by certain of said creditors and the decision of this court on said appeal, and pleaded said decision (*Estate of Bell*, 131 Cal. 1, [63 Pac. 81, 668].) as barring and estopping petitioner in this pending proceeding from claiming that the amount paid her up to said August 6, 1898, for family allowance was less than eighty thousand dollars.

They likewise set up the proceedings for the settlement of the final account of petitioner as special administratrix of said estate filed February 10, 1902, to which we have heretofore referred, in which she sought credit for items of family allowance between the making of the order of January 12, 1893, and that of October 14, 1895, the objections and contests thereto by said creditors, the matter of the appeal to this court from the order settling said account by allowing such credits, the decision and judgment of this court reversing said order (*Estate of Bell*, 142 Cal. 97, [75 Pac. 679]), and pleaded such judgment of this court as final and conclusive and as barring and estopping petitioner from asserting any alleged right to a further family allowance as set forth and asserted in her pending petition. The statute of limitations was further interposed against the claim or right of petitioner to the relief demanded.

Upon the issues thus made the matter proceeded to a hearing and while the petitioner was presenting her case

to the court it developed from the evidence (at least that was the claim of petitioner and the court took that view of it) that the executors of the estate had on February 2, 1894, petitioned the court for a reduction of the family allowance, which petition was opposed by the widow; that the matter of the petition for said reduction coming on to be heard, the executors were examined, the condition of the estate inquired into, and thereafter the matter continued from time to time on the calendar of the court. That on May 1, 1894, the matter coming on again for further hearing and the attorneys for the executors and for said widow having reached some agreement in the matter, they asked the court to dismiss the petition for a reduction. This the court declined to do but ordered the application for a reduction of the family allowance by said executors off the calendar, and further ordered that the allowance of two thousand dollars a month remain and continue until the further order of the court; that the clerk of the court had entered in the minutes the first part of the order directing the petition for reduction off the calendar, but had omitted to enter the balance of the order. Upon this showing from the evidence the petitioner immediately applied for and obtained, over the objection of appellants, leave of court to amend her petition to conform to the facts thus proven, and an amended petition was filed, it being stipulated that the answer to the former petition should stand as the answer to the amended petition, and that all new matters alleged in the petition should be deemed denied by the creditors who had answered. The amendment which was made to the petition by leave of the court and to meet the alleged proof of the making of the order of May 1, 1894, was substantially as follows: The allegation in the original petition that no order was made by the court after the order of January 12, 1893, and until the order of October 14, 1895, was stricken out and it was alleged that after the filing of the inventory it was believed by petitioner, the executors, the court, and the creditors that an order of court existed granting petitioner an allowance of two thousand dollars from and after the date of the filing of the inventory, as well as prior thereto and until the order of October 14, 1895. The prayer of the petition was also changed to conform to the amendment made,

to the extent of asking that an order *nunc pro tunc* as of May 1, 1894, be entered in conformity to the order of the court made on that day but not entered, continuing the family allowance from June 17, 1893, to October 14, 1895, at two thousand dollars per month. The amended petition being filed, the trial proceeded, and upon a submission of the evidence upon both sides the court made its findings of fact in favor of the petitioner, in accordance with the allegations of the amended petition and against the appellants as to all defenses interposed by their answer. The court specifically found that on the first day of May, 1894, the court had ordered and directed that the family allowance of two thousand dollars a month should remain and continue and be paid to the said widow until the further order of the court, but that through the mistake or inadvertence of the clerk of the court, it had not been entered in the minutes of the court, and that there remained unpaid to the petitioner the sum of $32,665.80 as a balance due her under said order.

The court further specifically found against the appellants on the defenses interposed by their answer,—namely, that the petitioner was barred and estopped by the judgments of the supreme court, which were pleaded, from asserting a claim for family allowance based on said order of May 1, 1894, or from asserting that any family allowance accrued in her favor between the return of the inventory on June 17, 1893, and the order of October 14, 1895. As conclusions of law from the findings the court held the petitioner entitled to have an order *nunc pro tunc* as of May 1, 1894, entered, directing that a family allowance of two thousand dollars a month remain and continue to be paid to said petitioner as widow of said deceased from the assets of said estate until further order of the court, and made a further order directing payment from said assets to her of the balance of family allowance due her under said order of court rendered on the first day of May, 1894, and entered *nunc pro tunc* as of that date, amounting to the sum of $32,665.80. An order to that effect was accordingly made.

Various points are urged by appellants for a reversal. The main attack, however, is directed against the findings, the claim of appellants being, in effect, that none of the essential

CLIII Cal.—22

findings of the court are supported by the evidence and it is particularly contended that this is true as to the findings with reference to the effect of the pleaded decisions of this court. As to them it is claimed, that they are not only not sustained by the evidence, but that they are directly contrary to it, and that the conclusions of the trial court as to the effect of those decisions upon the present claim of petitioner are erroneous.

In the view we take of the sufficiency of the attack by appellants upon the findings relative to the prior decisions of this court pleaded by them as a bar, it will be unnecessary to discuss the many other findings which are also attacked. In fact, as far as the finding relative to the decision of this court in the *Estate of Bell,* 131 Cal. 1, [63 Pac. 81, 668], we shall not discuss it at all, because at most that decision bears only upon some of the minor matters involved in the present proceeding which are claimed to have been affected by it. Our consideration will be devoted solely to the findings in as far as they relate to the effect of the decision pleaded and reported in the *Estate of Bell,* 142 Cal. 97, [75 Pac. 679]. We say the effect of the decision, because that is the question presented by the attack upon the findings relative to it. There is no question of conflicting evidence embarrassing the consideration. A transcript of the record on that appeal and the decision of the court based upon it were offered in evidence and constituted the evidence upon which this finding was made. The claim of the appellants under this evidence addressed to their answer pleading the decision in bar of petitioner's right to assert relief under the order of May 1, 1894, was, among other things, that the decision pleaded was a final and conclusive adjudication that there was no such order of May 1, 1894, or any order of the probate court in said estate making any family allowance, save the three orders of January 12, 1893, October 14, 1895, and May 4, 1898.

The finding of the court respecting this decision was of a negative character; that it did not debar or estop the petitioner from asserting or enforcing any alleged right to a further family allowance, nor was the cause of action or relief set forth in the petition barred by such decision. So that, as we say, under this finding the question is, What was

the effect of that decision on the present asserted right of petitioner; what was there decided by this court?

It will be observed that while this finding relates to the effect of the decision upon a further family allowance to petitioner, that proposition, while involved in the original, is not involved under the amended petition.  Under the amended petition the right to the payment of the allowance was asserted to have accrued under the alleged existing order of May 1, 1894, an order which had been made but not entered, and which the court ordered entered *nunc pro tunc,* and upon which it based its award for an accrued allowance upon it of $32,665.85.  It is the effect of the decision of this court in the *Estate of Bell,* 142 Cal. 97, [75 Pac. 679], upon the right of petitioner asserted under this order which is to be determined, and we are satisfied that the position of these appellants with respect to it is correct; that that decision was final and conclusive against the existence of any other order than the orders of January 12, 1893, October 14, 1895, and May 4, 1898; that it was *res adjudicata* that no order for family allowance of May 1, 1894, or other order save these three above mentioned had been made prior to 1902 when the account of petitioner as special administratrix, in which she sought credit for family allowance between June 17, 1893, the date of the return of the inventory, and October 14, 1895, was contested and determined, and that all she was entitled to under any then existing orders had been fully paid her.

This appears to us to be so clear from the record which was before this court on appeal from the order settling the account of petitioner as special administratrix, the decision of this court upon it and the application of the doctrine of *res adjudicata,* that no extended elaboration of the matter is called for.

The general rule as to *res adjudicata* is that: "Matters which have been judicially determined cannot be again drawn into controversy between the same parties.

"The judgment of a court having jurisdiction directly upon the point in controversy is, as a plea, a bar; and as evidence, competent and conclusive as between the same parties and their privies; not only where the subject-matter is in all respects the same, but where the point comes incidentally in

question in relation to a different matter." (*Garwood* v. *Garwood*, 29 Cal. 514; *Green* v. *Thornton*, 130 Cal. 482, [62 Pac. 750].)

"An adjudication is final and conclusive not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to, or essentially connected with, the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense." (*Harris* v. *Harris*, 36 Barb. 88; *Gray* v. *Dougherty*, 25 Cal. 266.)

"Where a court of competent jurisdiction had adjudicated upon a particular matter, that matter is not open to inquiry in a subsequent action for the same cause, between the same parties, notwithstanding the defendant may have discovered new evidence not in his power at a former trial." (*Kilheffer* v. *Herr*, 17 Serg. & R. 319, [17 Am. Dec. 658].)

Now, applying this doctrine to the matter under consideration: It appears from the transcript on appeal in the matter of the application of petitioner as special administratrix that she sought credit in the settlement of her account for items of family allowance aggregating the sum of twenty thousand dollars, payment of which she had made to herself under a claim that they were due her as such family allowance and had accrued between the date of the return of the inventory and the order of October 14, 1895.

Petitioner was appointed special administratrix in March, 1900, and her account was filed in February, 1902.

The creditors of the estate—the same appellants here— filed a contest against the allowance of such items on various grounds, among others: (1) That no order making any family allowance out of said estate was given or made at any time subsequent to the filing of the inventory and prior to October 14, 1895; (2) that no order or orders making any family allowance out of said estate had at any time been given or made other than, or in addition to, the said three orders so made respectively on January 12, 1893, October 14, 1895, and May 13, 1898; (3) that the amounts of family allowance payable under said orders immediately referred to had been fully paid; (4) that all family allowance at any

time ordered by said court had been paid in full prior to the appointment of petitioner as special administratrix.

Upon these issues raised by this contest a trial was had culminating in an order overruling the objections of the contestants to the allowance of said items. An appeal was taken by the contestants from the order settling the account so far as it allowed the special administratrix said contested amounts of family allowance paid to herself and the order allowing them was reversed by this court in the decision referred to—*Estate of Bell*, 142 Cal. 97, [75 Pac. 679].

An examination of that decision demonstrates that this court decided that the orders of family allowance made by the probate court in said estate were those of January 12, 1893, October 14, 1895, and May 13, 1898; that the first order ceased to be operative on the return ·of the inventory on June 17, 1893; that all family allowance which had accrued under said three orders had been paid, and directed the court to settle the final account by rejecting the payments in controversy, which were amounts asserted to have accrued under the order of January 12, 1893, and between the return of the inventory and the order of October 14, 1895.

We perceive no ground for any claim that this decision is not conclusive upon the right asserted by petitioner in the present proceeding. Her claim under it now, and the right she presently asserts, is for an order directing the payment of these same items of family allowance—which this court decided on the appeal referred to she was not entitled to—by virtue of an order claimed to have been made on May 1, 1894, but never entered in the minutes, and of the making of which she claims she was not advised until during the hearing on the present proceeding. But the fact that such an order was made and was either forgotten or its making undisclosed to her by the attorney who represented her when it was made and who subsequently ceased to do so, cannot affect the conclusiveness of the judgment on appeal, which is in fact a determination that no order for the payment of family allowance was made or existed after the return of the inventory and up to the making of the order of October 14, 1895.

In her account as special administratrix she sought credit for the payment to herself of this allowance as having

accrued in her favor between those dates. She could only have been entitled to such credits by virtue of the existence of some order of court making a family allowance which authorized the payments they represented. The contestants objected to their allowance expressly on the ground that there was no such order or any orders for family allowance, save the three which have been mentioned. There was, therefore, raised a direct issue as to what orders for payment of family allowance had been made which would support the claim to the credits asserted by petitioner. In support of her right to a credit for such payments, the administratrix offered the three orders above referred to, but no other. If the order of May 1, 1894, had then been made as found by the court in the present proceeding, it would have supported the claim petitioner asserted in her account as administratrix and which was contested for want of its existence, and it was essential to sustain such claim that she should have proved it. Whether that order, or any order authorizing their payment existed, was the issue in the contest and it was necessarily determined by the decision on appeal in that matter that no order, other than the orders specially referred to, was in force from the return of the inventory to October 14, 1895, under which any allowance asserted to have accrued during that period could be supported or sustained. If there was any order in force during that time, then the contested accounts were properly payable under it for that period, and instead of being rejected would have been allowed by this court by virtue of such order. In determining, however, that the amounts sought to be credited in her account were payments made to herself under the order of January 12, 1893, asserted to have accrued between the date of the return of the inventory and the order of October 14, 1895; that that order ceased to operate on the return of the inventory; that all allowance which had accrued under the orders of 1895 and 1898 had been fully paid; and that the account of the administratrix should be settled by the lower court by rejecting the contested items, this court decided that there was no order of court under which such contested payments could be sustained. That decision is final and conclusive against the existence of the order upon which petitioner now bases her right to the payment of these same amounts.

It is insisted by counsel for respondent that the decision of this court referred to has no bearing upon the order of May 1, 1894, which he denominates a separate and distinct order because that order was not before this tribunal for consideration. But if the order was separate and distinct that fact cannot affect the question of the conclusiveness of the decision under consideration, because whatever its character, its existence was a point at issue in the contested account proceeding. The question directly at issue was whether there was any order of court which could sustain the contested items. It was not a question as to a particular order, but what orders had at any time provided for a family allowance which would support them. If the order of May 1, 1894, was made, it would have sustained their payment. It would have been direct, as it was in fact essential, evidence necessary to support them, and was evidence that existed and which might have been produced at the hearing of said contest. The most that can be claimed by respondent now is that she was not aware of this order when the contest over the account was being had. But this only amounts to an insistence that the conclusiveness of the decision against the existence of any other orders during the period involved in said contest, save the three orders mentioned, may be overcome by showing that new evidence—the existence of another and fourth order—can now be produced. But under the authorities the conclusiveness of a judgment cannot be avoided for that reason. A solemn judgment determining the rights of parties to a controversy cannot be overcome by showing that new or additional evidence can now be produced upon the issue there involved and decided, which the party was unable to produce upon the former trial. If such a rule could obtain, judgments would never be conclusive. The rule as to the conclusiveness of judgments is based upon considerations of public policy—that there may be an end to litigation. The supreme court of the United States in *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1, [18 Sup. Ct. 18], referring to the general rule as to the binding effect of judgment on matters definitively put in issue and directly determined, says: "This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society

by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order, or the aid of judicial tribunals would not be invoked for a vindication of rights of persons and property, if, between parties and their privies, conclusiveness did not attend the judgment of such tribunals in respect to all matters of property put in issue and actually determined by them."

It is further insisted by respondent that the decision we have been discussing is not binding upon her in the present proceeding because here, she appears individually, and in the former proceeding she appeared as administratrix; that where it is sought to bind a person by a former judgment it is necessary that he should have been not only a party to both actions, but must have appeared in both in the same capacity or character. As a general rule this is true, but it can have no application here. While it is true that petitioner was acting in her official capacity as administratrix when she was seeking to sustain her right to the payments involved in the contest over her account, it was for her own individual benefit and for her sole advantage that she was asserting it. It involved nothing with relation to her official capacity, save that she had paid it to herself individually. She was asserting her claim in her own right as the real party in interest; she was not asserting any right proceeding from her official capacity as administratrix. Both then, and now, she was insisting upon the right to the allowance upon exactly the same ground; that she was entitled to it as having accrued in her favor during the period between the date of the filing of the inventory and the order of October 14, 1895, under orders of the court awarding it. Under these conditions it cannot be said that she appeared in either matter in a different capacity or character. In both proceedings she was the real party in interest, asserting individual and not representative rights, and is bound by the judgment. (1 Greenleaf on Evidence, sec. 535; 1 Freeman on Judgments, 4th ed., sec. 174; *Colton* v. *Onderdunk*, 69 Cal. 155, [58 Am. Rep. 556, 10 Pac. 395].)

We have pursued this discussion sufficiently. The finding of the trial court as to what was determined in the decision in the *Estate of Bell*, 142 Cal. 97, [75 Pac. 679], and the

conclusions of that court as to the effect of that decision are erroneous. It decided, and was conclusive to the point, that. no order of court save the orders specially mentioned in it,. existed making an allowance to petitioner between the return of the inventory and the order of October 14, 1895, and determines that all allowances under any order of court. making them had been fully paid to respondent.

Under this view, it is, as we have said, unnecessary to consider any other of the various grounds urged by appellants for a reversal.

The order appealed from is reversed with costs to the appellants.

Shaw, J., Angellotti, J., Sloss, J., and Henshaw, J., concurred.

Rehearing denied.