[Crim. No. 2231.   Second Appellate District, Division Two.—February 28, 1933.]

THE  PEOPLE,  Respondent,  v.  THOMAS  ASHRAWY, Appellant.

Robert H. Patton for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and William R. McKay, Deputy District Attorney, for Respondent.

ARCHBALD, J., *pro tem.*—Defendant was charged with the crime of grand theft in an information containing two counts, the first of which charged the theft on or about August 7, 1930, of merchandise of the value of $3,200 belonging to the firm of Dibbs & Maloof, and the second the theft of merchandise of the value of $1750 belonging to the firm of Haboush Brothers & Kaydouh, on the same date. The plea was not guilty and not guilty by reason of a previous acquittal, to both counts. The jury returned a verdict of not guilty on the second count and of guilty on the first. Motion for new trial as to count I was denied, and judgment of conviction having been entered thereon, defendant has appealed.

Appellant was charged in a prior indictment with three counts of grand theft, such indictment being the same as in the instant case except that here the theft of different merchandise belonging to two firms not mentioned in the first instance is charged. At the present trial counsel for appellant offered a stipulation, which was accepted by the prosecution, to the effect that the People offered testimony at the first trial in support of substantially the following facts: That during the year 1928 defendant obtained mer-

chandise of the value alleged and under consignment agreements similar to those in the instant case from the three firms named in the first indictment, of the general character of laces, linens, fancy table-cloths, tapestries and imported merchandise of like character; that thereafter and on August 7, 1930, he left the city of Los Angeles in his automobile in the company of one Soby Hallas; that about twenty miles east of Needles, California, he was held up and robbed of all the merchandise he had taken in his machine; that defendant returned to Los Angeles and reported his loss to the police; that certain of such merchandise was insured against loss by the owner, and defendant told an insurance adjuster, prior to the time same was recovered by the police and while it was on display where it was found, that he had not heard anything of his merchandise; that in October of 1931 defendant went with two police officers to a place in Pasadena, owned and operated by one Alita Dulane, and found merchandise of the description theretofore given as that of which he had been robbed, which was segregated into three piles and a part of which was afterwards identified as being a portion of the merchandise mentioned in the first indictment.

Appellant in his brief says that the evidence was the same in both cases with the exception of that with reference to the ownership of the goods and the fact that at the first trial Soby Hallas testified for the prosecution that the robbery actually occurred on the desert and that the merchandise was taken, while on the second trial he testified that it was a fake robbery and that appellant left his goods at the Appleton Apartments in Los Angeles and had none with him at the time. Respondent does not deny that otherwise than as stated the evidence was the same in each case, but does state that the theory in the first proceeding was that an actual robbery had been committed and that the goods were thereafter bought back from the robbers by appellant, who thereafter converted them.

It appears from the evidence introduced in the instant case that appellant was living in apartment 501 of the Appleton Apartments; that he told the manager, one MacLane, that he intended to make a business trip by automobile to New York, and that on August 6, 1930, he surrendered apartment 501 and rented another, No. 104, in the

same building, not under his name but under one which he asked MacLane to select for him, which was "Harrison". Appellant then had the merchandise in his possession, stored in his apartment, and asked MacLane to assist him in making the transfer. This the latter did, and the change was made on the night of the 6th, appellant having his own lock put on apartment 104. Appellant apparently left early the next morning, although he evidently slept in apartment 501 the preceding night. The merchandise was piled on the floor of apartment 104 at the time of the change above noted. The next day MacLane's attention was called to the fact that a light had been burning all night in apartment 104, and he thereupon called the locksmith who had previously changed the lock at Ashrawy's request and had him make a key for the room. He then opened it and found that "all the articles which were stored in the room the night before, that is, in the center of the room, were evidently removed, and either back in the closet and the bathroom, the stall shower, which it was—had evidently been packed in there, which there was a plug key placed in the door". MacLane said of the articles which he had helped carry into the room: "Some were in traveling cases and some were loose tapestries, folded up"; also that there were a number of laces similar to those introduced in evidence, "wrapped up in a sheet, which sheet was tied into four knots, the four covers tied, which I could see them, though". Some time after this occurrence MacLane was changed to the Harvard Terrace Apartments in Los Angeles, and on January 3, 1931, Ashrawy moved into an apartment in that establishment and later, in February of 1931, moved the goods from apartment 104 of the Appleton, which he had kept rented until then, to his new location. MacLane said appellant told him he had moved in everything from the Appleton Apartments, and that he afterwards helped appellant move the merchandise from his apartment to a locker room in the basement of the building; that, again, there were "some of the same cases, some of the same type of linen, draperies and tapestries"; that appellant took a sheet in which some of them were wrapped to cover a window, and that "it was one of the sheets from the Appleton Apartments which the stuff had been stored in at the Appleton Apartments".

With the weak identification by MacLane and with Hallas and appellant both testifying that the merchandise in question was in the car and was stolen, the district attorney had no alternative, at the first trial, but to rely on an embezzlement of the goods after they were recovered from the robbers as claimed by Ashrawy.

In the instant case the trial court treated the question of former acquittal as one of fact and left it to the jury under appropriate instructions, which, among other things, charged them that if they found as a matter of fact that the merchandise involved in the case before them was taken by the defendant at the same time and place and as a part of the same act and transaction as the merchandise involved in the first trial, and with the same intent, they then must find for the defendant as to his plea of former acquittal. · The determination of this plea was undoubtedly left to the jury, for the reason that if the jury believed there was an actual robbery there was evidence from which it might also find that the merchandise in the instant case was not placed in the automobile, but remained in the Appleton Apartments until it was moved to the Harvard Terrace Apartments. In our opinion the verdict of the jury as to such plea was correct. The first trial was based entirely on a taking after the alleged robbery, and in view of the very indefinite description of the goods remaining in the Appleton Apartments a jury could not be expected to find which of them were involved in the robbery and which remained at appellant's apartment. The theory on which the case was tried, under the circumstances of the first prosecution of appellant, was as much a fact in the issue determined by the jury as the evidence presented; and under the facts, in our opinion, the issue which was so clearly before the jury in the instant case—with evidence which indicated in no uncertain terms that the robbery was a fake and that all the goods remained in the Appleton Apartments—was not before the jury in the first proceeding.

■ While it is true in regard to a judgment in a civil action that it ''is final and conclusive not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to, or essentially connected with, the subject-matter of the litigation, and every matter coming within

the legitimate purview of the original action, both in respect to matters of claim and of defense'' (*Estate of Bell*, 153 Cal. 331, 340 [95 Pac. 372, 376]), we do not think the rule applies to the same extent in a criminal action. We think the rule there should be limited to matters actually submitted to the jury for its determination; otherwise we would, as in the instant case, bind the state, by successful subornation of perjury, where the same issue might have been but was not presented to the jury because of such criminal act. Such a conclusion is unthinkable under the facts of the two cases here involved.

■ We fail to see how the jury could have been misled by the modification of appellant's requested instruction relative to former acquittal. The law was clearly stated in the instruction as given, and the jurors, even though not possessed of legally trained minds, could have had no difficulty in applying it to the facts.

■ The court instructed the jury in effect that if they believed from the evidence that appellant received the merchandise mentioned in count I ''on or about June 1, 1931'', and thereafter converted it to his own use knowing the same belonged to said firm of Dibbs & Maloof, he would be guilty of grand theft. June 1, 1931, is the date appellant claimed to have received the goods back from the alleged robbers. August 7, 1930, is the date when all of the merchandise, including that involved in the first indictment, was changed to room 104 of the Appleton Apartments and when the plan to conceal it apparently first took form and substance. Appellant urges that half of the jury, under such instruction, might have believed the robbery story and the other half might not have done so, and yet all might have believed that the merchandise was converted after June 1st, as even under the theory of a fake robbery there was a continuous concealment and conversion. The instant case was tried on the theory that the robbery was a fake, and that meant necessarily that the conversion began on the earlier date. The instruction in question, then, was inconsistent with such theory and was evidently used by the district attorney as an anchor to the windward in case the jury might believe appellant's story. In our opinion the instruction should not have been given, but we fail to see how appellant could have been prejudiced thereby in view of

the verdict under the instruction relative to former acquittal, as the offense, without the fake robbery, had its inception at least in one act of concealment and certainly in one intent, viz., to take all the goods in appellant's possession from the various owners. We do not see how the jury, under all the evidence, could have stamped the story of such robbery with the symbol of truth. The same is true as to the instruction with reference to the date of the offense.

We are also of the opinion that the modification of the instruction proposed by appellant as to the passing of title to the merchandise left such instruction clearly stating the law from defendant's theory of the case.

We see no error in the court's instruction as to the meaning of the word "consignment".

Appellant urges that the evidence failed to establish a fiduciary relationship between Dibbs & Maloof, the alleged owners of the property mentioned in count I, and also failed to show any conversion thereof to appellant's use. It is true the evidence shows no demand by Dibbs & Maloof for the goods; nor does it show that they knew what was going on. The record, however, is one that affords ample support to the conclusion that the jury must have reached on both points.

■ The prosecuting attorney asked the defendant "who was with him" in his apartment when he was arrested. The question was objected to, but no ground of objection was stated. Counsel for defendant instructed him not to answer on the ground that "he is incriminating himself". A colloquy ensued during which the court apparently said to the attorney: "You are anxious to go to jail?" The attorney replied, "Not anxious, of course," whereupon the witness said, "I will answer it; I will answer it. Mr. Patton, don't get into trouble. You are breaking up my home, Mr. McKay. You broke my home in this last trial, and now you are breaking my home. I was with a girl friend; I had a girl friend with me." Thereupon the prosecutor said: "That is all I am asking." Subsequently the defendant, who was apparently somewhat excited, reiterated, without question being asked, that he had a girl friend with him and that the district attorney was breaking up his home. The question and its answer seemed to have no proper place in the examination, and we are of opinion that if a proper

objection had been interposed the court would have sustained it. It would seem, however, that defendant himself put the damaging construction upon it. We cannot believe under all the evidence, however, that the question was prejudicial, much as we regret that any public official would ask a question that he must know is incompetent, actuated solely by the hope or knowledge that something will come out that may in some way disparage the witness and thus attempt an impeachment which he knows could not be made under section 2051 of the Code of Civil Procedure.

Judgment and order affirmed.

Works, P. J., and Stephens, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1933.