[Civ. No. 2117. Fourth Appellate District.—March 22, 1938.]

GUS WESCOTT HOLMAN, Respondent, v. ETHEL M. HOLMAN et al., Defendants; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Rutan, Mize & Kroese, Louis Ferrari, Edmund Nelson and Hugo A. Steinmeyer for Appellant.

William P. Doyle and Albert E. Coger for Respondent.

JENNINGS, J.—Plaintiff sued for a declaratory judgment and "for such other and further relief as may be proper". The answer of the defendant, Bank of America National Trust and Savings Association, a national banking association, set up as affirmative defenses, first, that the cause of action alleged in plaintiff's complaint had been litigated in a prior action between the same parties and the judgment rendered in said prior action constituted a complete adjudication of the issues involved in the present proceeding; second, that the cause of action alleged in plaintiff's complaint was barred by the statute of limitations; third, that the cause of action described in the complaint was barred by plaintiff's laches in bringing the present suit. Trial of the action resulted in the rendition of a judgment adverse to the above-mentioned defendant from which it has presented this appeal.

There is no dispute between the parties to this appeal as to the pertinent facts which were developed by the evidence produced during the trial. These facts are embodied in the following statement: Plaintiff's father, Sidney Holman, died in Orange County on February 26, 1921. By his will said

decedent, after making two bequests of money, gave and bequeathed the entire residue of his estate to his wife, Emma Holman, "to be held and used by her in any manner she may see fit during her natural life, with power to sell any portion thereof that may be necessary for her proper maintenance and support". The will further provided that "On the death of my beloved wife, it is my will and I hereby devise and bequeath to my son, Guy W. Holman, all the rest, residue and remainder of my property, both real and personal, wheresoever situate, to be his forever." Probate of the will resulted in the entry of a decree of distribution on June 9, 1922, whereby it was adjudged that the widow, Emma Holman, was entitled to take absolutely as her own an undivided one-half of the entire residue of the estate remaining after the bequests and expenses of administration were paid and to have a life estate in the remaining one-half to be held and used by her as she might see fit during her life, with power to sell any portion thereof that might be necessary for her proper support. The decree thus rendered was based on an implied finding that the entire estate of the deceased was community property of the testator and his wife, Emma Holman. Apparently, the greater part of said estate and the only part thereof which is involved in the present action consisted of a 20-acre parcel of land located in Orange County. On April 12, 1926, Emma Holman and Guy W. Holman jointly executed a grant deed whereby they conveyed fee title to the above-mentioned 20-acre tract to R. O. Horner. The consideration for such transfer was the sum of $32,000 in cash, less the necessary expenses incidental to the sale, and a conveyance by Horner of title in fee to a parcel of land in Santa Barbara County. This last-mentioned real property will hereafter, for convenience, be referred to as "the Santa Barbara property". The deed executed by Horner to the Santa Barbara property named Emma Holman as the sole grantee. The net cash proceeds of the sale being a sum of money somewhat in excess of $31,000 were likewise paid to Emma Holman. From these proceeds Emma Holman paid the sum of $4,-128.33 in full satisfaction of a mortgage against the Orange County property, which mortgage had been given to secure payment of an obligation of the plaintiff herein, Guy W. Holman. On May 10, 1926, Emma Holman created an ir-

revocable trust at the First National Bank of Anaheim, the predecessor of the Bank of America National Trust and Savings Association, and transferred to said First National Bank of Anaheim as trustee certain real and personal property. Included in the property thus turned over to said bank was the Santa Barbara property and the remainder of the cash proceeds received by Emma Holman from the sale of the 20-acre Orange County tract. The declaration of trust which the First National Bank, as trustee, and Emma Holman, as trustor, executed on May 10, 1926, provided that the bank, as trustee, should pay to Emma Holman during her life all the net income derived from the trust estate and was authorized and empowered to use and apply for Emma Holman's benefit such portions of the principal of the trust estate as the trustee in its discretion might determine to be adequate to provide for the trustor. The instrument further provided that upon Emma Holman's death the trustee should first pay from the funds and property remaining in the trust estate funeral and burial expenses and charges incurred during the trustor's last illness and should then deliver to Guy W. Holman, her son, or his lineal descendants, one-third of the remainder of the trust estate and should retain the remaining two-thirds of such trust estate in trust for designated beneficiaries who were the minor children of Guy W. Holman, paying to such beneficiaries annually in equal proportions the net income from the trust estate and delivering to each beneficiary his or her share of the estate when such beneficiary should attain the age of 25 years. On July 7, 1926, Emma Holman was adjudged incompetent on the petition of Guy W. Holman and L. E. Miller was appointed by the Superior Court of Orange County to be the guardian of her person and estate. Shortly thereafter an action number 21000 was instituted in the Superior Court of Orange County by Emma Holman through her guardian whereby it was sought to have the trust created by her on May 10, 1926, annulled and set aside and the property transferred by her to the First National Bank of Anaheim pursuant to the trust agreement restored and reconveyed to her on the ground of her alleged incompetency at the time she created the trust. The defendants named in this suit were the First National Bank of Anaheim, Guy W. Holman, and two minor children of Guy W. Holman. Guy W. Holman

filed an answer and a cross-complaint in this action. In his answer he admitted all of the allegations contained in the complaint of the plaintiff. In his cross-complaint he alleged that he had joined with his mother, Emma Holman, in the sale of the Orange County property and that it was agreed between his mother and himself that the proceeds derived from said sale should immediately be divided between them in the following manner: first, that the sum of approximately $4,000 should be used to pay off the mortgage on the Orange County land; second, that his mother would pay him the sum of $8,000 in cash; third, that his mother would execute a deed conveying to him the fee title to the Santa Barbara property which he alleged was of the value of $8,000. The cross-complaint further alleged that his mother did not carry out her part of the agreement but on the contrary transferred and conveyed to the First National Bank of Anaheim the entire remainder of the proceeds obtained from the sale, also fee title to the Santa Barbara property, which transfer was made without Emma Holman receiving any consideration therefor and was procured by said bank through undue influence exerted by the bank upon Emma Holman. Trial of this action resulted in the entry of a judgment upholding the validity of the trust which Emma Holman had created. In its findings which formed the basis for the judgment the trial court found that Emma Holman was entirely competent at the time she made the trust agreement, that the trust was valid and the declaration of trust whereby it was created was fair and equitable, that it was not true, as alleged by Guy W. Holman in his cross-complaint, that his mother had agreed to deed the Santa Barbara property to him and to pay him the sum of $8,000 from the proceeds of the sale of the Orange County property, and that there was no agreement whatever between Guy W. Holman and his mother, Emma Holman, relative to the Orange County property at the time it was sold or at the time Emma Holman received the proceeds from said sale. One finding made by the court in said action deserves special mention. In paragraph III of his cross-complaint Guy W. Holman alleged ''That said Sidney Holman by his last will and testament devised and bequeathed all of his property to his wife, Emma Holman, the plaintiff herein, to be held and used by her during her natural life, with power to sell any portion thereof that

should be necessary for her proper maintenance and support, and upon the death of said Emma Holman, the plaintiff herein, all of said property was devised and bequeathed by said Sidney Holman to this defendant, to be his forever." With respect to the allegations thus made the court found: "The court makes no findings as to the allegations of paragraph III of the cross-complaint for the reason that the terms of the will of the said Sidney Holman are adjudicated by the court in the decree of distribution of the estate of Sidney Holman, deceased."

Appellant's first contention is that the trial court in the present action erroneously determined that the issues herein had not been adjudicated in the prior suit to which reference has been made in the preceding paragraph. It is urged that the same issues predicated on precisely the same facts as those which appear in the instant proceeding were before the court in the former action. It is further contended that all matters involved in the issues offered in the prior action which might properly have been litigated and decided therein must be presumed to have been determined. It is particularly urged that respondent's right to a remainder interest in the proceeds derived from the sale of the 20-acre tract in Orange County was necessarily involved in the issues presented in the former suit, that it was respondent's duty as a defendant in said action to have asserted therein such right, and that a judgment having been rendered in said action which was unfavorable to him and which has long since become final is, therefore, conclusive upon his present claim to a right to a remainder interest in the proceeds obtained from the sale of the Orange County property. In this connection attention is directed to a declaration not infrequently found in adjudicated cases to the effect that a party may not with impunity litigate an asserted cause of action piecemeal.

The principal of *res judicata* on which appellant relies is a most familiar and well-settled doctrine of the law. The rule is designed to prevent vexatious litigation and to require litigants to rest upon one decision in the controversy between them. (15 Cal. Jur., p. 98; *Miller & Lux, Inc.*, v. *James*, 180 Cal. 38 [179 Pac. 174].) The principle has been aptly described as one that is "Indispensably essential to any well-regulated system of jurisprudence." (*Giuffre* v.

*Lauricella,* 25 Cal. App. 422 [143 Pac. 1061].) It may further be conceded that in order to accomplish the laudable purpose of finality of litigation the doctrine has been extended to include not only matters actually determined by a judgment but also every other matter which the parties might have litigated and have had decided as incident thereto or essentially connected with the subject-matter of the litigation and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense. (*Estate of Bell,* 153 Cal. 331 [95 Pac. 372] ; *Price* v. *Sixth District Agricultural Assn.,* 201 Cal. 502 [258 Pac. 387] ; *Henderson* v. *Miglietta,* 206 Cal. 125 [273 Pac. 581] ; *Ernsting* v. *United Stages,* 206 Cal. 733 [276 Pac. 103].)

The problem here presented is therefore whether or not the doctrine as above defined is applicable to the situation developed by the facts heretofore stated. The solution of the problem depends finally on a determination of whether or not it may be declared that respondent's right to a remainder interest in the proceeds derived from a sale of the Orange County property was a matter so essentially connected with the subject-matter of the prior action brought by Emma Holman through her guardian in 1926 that it could properly have been litigated in said action and there decided. As heretofore observed, this prior suit was instituted for the purpose of having the trust which Emma Holman had shortly theretofore created in the property declared invalid and annulled and the property which she had transferred to the trustee restored to her. The sole ground alleged in her complaint in said action for seeking the relief for which she prayed was her alleged incompetency at the time she created the trust. Respondent, as noted, was named as a defendant in the action and filed both an answer to the complaint and a cross-complaint. The answer admitted Emma Holman's incompetency. The cross-complaint alleged that he had consented to the sale of the Orange County property and had joined in the deed of conveyance pursuant to an agreement between himself and his mother whereby the latter agreed that upon completion of the sale she would first pay off the mortgage against the property and would then turn over to him $8,000 from the remainder of the cash proceeds and execute to him a deed of conveyance to the

Santa Barbara property. The pleading further alleged that his mother did not perform her part of the agreement and that therefore from the time the sale of the Orange County property was consummated up to the date Emma Holman entered into the trust agreement with the First National Bank of Anaheim she held title to the Santa Barbara property and the sum of $8,000 in money in trust for him. In paragraphs II and III of the cross-complaint it was alleged that the Orange County property was community property of respondent's father, Sidney Holman, and his mother, Emma Holman, and that by his will Sidney Holman devised and bequeathed all of his property to Emma Holman for life with power in her to sell any part that might be necessary for her support and the remainder over to respondent.

It is apparent therefore that two main issues were presented to the court in the trial of the former action. These were, first, the alleged incompetency of Emma Holman when she created the trust and, second, whether or not Emma Holman had made the agreement to turn over $8,000 in money and title to the Santa Barbara property to the respondent as consideration for his joining in the deed to the Orange County property. These two issues were determined adversely to respondent. The court expressly found that Emma Holman was fully competent at the time she created the trust and that the sale of the Orange County property was not made pursuant to the agreement alleged in the cross-complaint but on the contrary that there was no agreement at any time whatever between Emma Holman and the respondent relative to the Orange County property or the proceeds derived from its sale. The court further expressly refused to make any findings with respect to the allegations contained in paragraph III of the cross-complaint wherein Guy W. Holman alleged that he was entitled to a remainder interest in all of the property owned by his father at the time of his death and gave as its reason for such refusal that the terms of Sidney Holman's will had theretofore been adjudicated by the decree of distribution of the estate of Sidney Holman, deceased.

Immediately following the last-mentioned finding the court found that the Orange County land had been distributed by the decree of distribution which was made in the estate of Sidney Holman, deceased, as follows: ''To Emma Holman,

the plaintiff herein, an equal undivided one half interest thereof, absolutely as her own by operation of law, the same being her community interest, and the remaining one half interest to Emma Holman under the terms of said last will and testament, as follows: To be held and used by her in any manner she may see fit during her natural life, with power to sell any portion thereof that may be necessary for her proper maintenance and support, and upon her death to Guy Wescott Holman, the cross-complainant, to be his forever.''

The decree thus made constituted a final adjudication of the terms of Sidney Holman's will as the trial court in said action No. 21000 correctly found. The effect of the decree in the probate proceedings was to vest a life estate in an undivided one-half interest of the estate of the deceased in Emma Holman with a remainder over in such interest in respondent, Guy W. Holman. (*Hardy* v. *Mayhew*, 158 Cal. 95 [110 Pac. 113, 139 Am. St. Rep. 73]; *Luscomb* v. *Fintzelberg*, 162 Cal. 433 [123 Pac. 247]; *Colburn* v. *Burlingame*, 190 Cal. 697 [214 Pac. 226, 27 A. L. R. 1347]; *Estate of Rath*, 10 Cal. (2d) 399 [75 Pac. (2d) 509].) There was no occasion therefore for the court in action No. 21000 to pass upon the right of Guy W. Holman, defendant and cross-complainant in said action, to a remainder interest in the estate of his father. This right had been finally adjudicated and determined by the decree of distribution. Respondent's right to a remainder was not incidental to or essentially connected with the subject-matter of said action No. 21000 and in addition such right had been fully adjudicated and determined by the decree of distribution which had become final long before action No. 21000 was instituted. Appellant's contention that the judgment in action No. 21000 constituted an adjudication of the issues involved in this proceeding is therefore entirely devoid of merit.

■ Appellant's second contention is that the present action is barred by the statute of limitations, that the trial court's finding to the contrary is improper, and that the judgment which amounted to a denial of appellant's plea of the bar of the statute is therefore erroneous and must be reversed. In support of this contention appellant presents the following argument: The decree of distribution of the estate of Sidney Holman, deceased, distributed to Emma

Holman a life estate in an undivided one-half interest in the Orange County property with a power to sell any portion that might be necessary for her support and a remainder over in such undivided half interest to respondent. Thereafter the owner of the life estate and the remainderman voluntarily joined in a deed to the Orange County property because they were able to consummate a sale of said property which they both considered was advantageous. Under these circumstances the respective estates which respondent and his mother had in the undivided one-half interest in the Orange County property terminated when the deed of conveyance was executed. When Emma Holman, with the consent of respondent, received the consideration which was paid for the transfer she was under the duty to account to the remainderman for his share and she therefore held a portion of such consideration in trust for the remainderman. . When Emma Holman, on May 10, 1926, entered into the trust agreement creating an irrevocable trust and transferred to appellant's predecessor in interest the entire net proceeds of the sale of the Orange County property as trustee she thereby repudiated the trust in which she held a portion of the consideration for the remainderman and the statute of limitations then began to run against the remainderman.

It is apparent that the fundamental premise of the above-described course of reasoning is that, under the peculiar circumstances here presented, the respective estates which had become vested in the Orange County property by the decree of distribution terminated on the execution of the joint deed and did not continue in the proceeds which were derived from the sale of said property. It is conceded that the suggestion thus advanced is novel, that there is no authority directly supporting it, and that whatever authority there is upon the general question is contrary to the contention. Attention is called to the statement of the rule as given in Ruling Case Law and Corpus Juris. In the former the rule is thus stated: "As a general rule, in case of a sale of the entire property, the tenant for life and the remainderman take the same interests in the proceeds, respectively, as they had in the property, the income going to the life tenant and the principal at his death to the remainderman." (17 R. C. L., p. 646, sec. 38.) In the latter it is declared: "Where the

entire estate is sold there must be an apportionment of the proceeds between the life tenant and remainderman which must be based upon the value of their respective interests at the time of the sale.'' (21 C. J., p. 962, sec. 99.) It is, however, contended that all of the authorities cited in support of the rule are cases wherein the sales were involuntary and it is argued that on principle the rule should be different where the sale of the property was voluntary which is the situation here presented.

It may be conceded that upon the sale of the Orange County property and the joint execution by the life tenant and remainderman of the grant deed to the purchaser the respective estates in the particular property thus conveyed terminated. Necessarily this must be true. The grantee named in the deed thus executed became the owner of the absolute fee title to the property. Undoubtedly the life tenant and remainderman might then have divided the proceeds.of the sale between them or they might have made some agreement regarding a future division of the proceeds whereby they would have indicated an intention that the respective estates which had existed in the real property should not continue in the proceeds. (*Salles* v. *Loane,* 204 Cal. 55 [266 Pac. 538].) However, they followed neither of these courses. The respondent in his cross-complaint in action No. 21000 asserted that there was a certain agreement between his mother and himself respecting a division of the proceeds. As heretofore pointed out, the presence or absence of such an agreement was one of the main issues presented in such prior action wherein appellant's predecessor was a party defendant. This issue was decided adversely to respondent by an express finding that neither the agreement alleged nor any other agreement respecting a division of the proceeds was made. The entire proceeds of the sale including fee title to the Santa Barbara property were turned over to Emma Holman, the owner of a life estate in an undivided half interest in the Orange County property with the consent of the owner of the remainder in such undivided half interest.

Under these circumstances no good reason appears why the general rule to which reference has heretofore been made should not be applicable. (See *In re Oertle,* 34 Minn. 173 [24 N. W. 924, 57 Am. Rep. 48], and *Thompson* v. *Thompson,* 107 Ala. 163 [18 So. 247].) ▮▮ The execution of the joint

deed is not important since separate deeds might have been executed conveying to the purchaser the respective estates which existed in the property and thereby the same result would have been achieved. The fact that the proceeds of the sale were turned over to the life tenant and retained by her with the consent of the remainderman is not indicative of an abandonment of his right to share in such proceeds in the absence of an agreement to that effect. ▮ There is, moreover, no occasion for attempting to work out a trust relationship between the life tenant and the remainderman in such proceeds. It must be borne in mind that the testamentary instrument which created the two estates in the Orange County land expressly provided that the life tenant should have the ''power to sell any portion thereof'' that might be ''necessary for her proper maintenance and support''. Obviously it was the testator's intent that the life tenant should have the right to consume the entire estate if the necessity should arise and the decree of distribution which faithfully followed the language of the will recognized the testamentary intent so clearly expressed and conferred upon the life tenant the wide power granted by the will. It was entirely reasonable that when the land was sold the proceeds of the sale should be held and retained by the life tenant who had the undoubted right to use any part or all of such proceeds for her proper maintenance during her life. ▮ As to one-half of such proceeds she could make whatever disposition thereof she wished since by the decree of distribution such an interest had been distributed to her absolutely. As to the remaining one-half she continued to have exactly what the decree of distribution gave her which was a life estate with the power heretofore mentioned. Having the dominion and control of the entire proceeds she could unquestionably transfer to a third party all thereof but as to one-half of the proceeds such transfer would be effective only as to the interest which she held therein which was a life estate and the transferee would take only what she could lawfully convey which was a life estate. (Civ. Code, sec. 1108; *Hall* v. *Wright,* 17 Cal. App. 502 [120 Pac. 429]; 16 Cal. Jur., p. 373, sec. 10, p. 375, sec. 12.) The trial court correctly determined that upon the death of Emma Holman the respondent as remainderman was immediately entitled to have one-half of the proceeds derived from the sale of the

Orange County property less the amount shown to have been paid by the life tenant in satisfaction of the mortgage on the Orange County property to secure payment of a personal obligation of respondent.

Appellant further complains because the trial court adjudged that it should pay simple interest at the rate of 7 per cent per annum in its individual capacity and not as trustee on the sum of $11,794.95, which was the amount found by the court to be due to respondent from June 24, 1933, the date of Emma Holman's death. That portion of the judgment which is thus made the object of special attack is as follows: "That Guy W. Holman do have and recover from the Bank of America National Trust and Savings Association, individually, interest on said sum of $11,794.95 from the 24th day of June, 1933, at the rate of seven per cent per annum, amounting now to $2,100.65." Respondent now concedes that he is not entitled to recover said sum of $2,100.65 awarded to him as interest as provided by that portion of the judgment last quoted.

It is therefore ordered that the portion of the judgment of the trial court which awards to respondent interest in the amount of $2,100.65 be vacated and stricken therefrom. In all other respects said judgment is affirmed. *Remittitur* to issue forthwith.

Barnard, P. J., concurred.

Marks, J., deeming himself disqualified did not participate in this opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 21, 1938.