[Civ. No. 19532.   First Dist., Div. One.   May 18, 1961.]

Estate of SPIRO D. GIACOMELOS, Deceased.   ANN GIA-
COMELOS, Appellant, v.   BANK   OF   AMERICA
NATIONAL TRUST AND SAVINGS ASSOCIATION
(a National Banking Association), Respondent.

Dodge, Evans, Reyes, Brorby & Driscoll and Robert P.
Brorby for Appellant.

Thomas G. Michaels and J. D. Cooper for Respondent.

BRAY, P. J.—Appellant appeals from a judgment apportioning moneys received from a forced sale to the State of California of real property in which appellant held a life estate.[1]

## QUESTIONS PRESENTED

1. Should the court have granted appellant's motion to appoint a trustee to reinvest the moneys received from the sale?

2. Did appellant waive her right to object to the court's action?

3. Was the apportionment fair?

## RECORD

Spiro D. Giacomelos died testate, leaving surviving his wife, Ann (appellant), and two children by a prior marriage, John and Penelope. Pursuant to his will, the decree of distribution in his estate distributed to Ann a life estate in certain real property, and to the Bank of America (respondent), as trustee for the use and benefit of the surviving children of decedent, the remainder interest.

The state asserted its power of eminent domain, and the property was sold by involuntary sale to the state for $42,500. Respondent bank, as testamentary trustee of the remainder interest, petitioned the probate court wherein the trust was pending to determine the value of appellant's life estate and to partition the proceeds of the sale between the life tenant and the remaindermen. Appellant filed an untitled document in which, after setting forth that she was the life tenant in the property involuntarily sold, she requested the court to appoint a trustee to invest the proceeds of the sale in "like improved real property and to invest and reinvest the proceeds of said sale to the extent that . . . [appellant] shall continue to receive the income from her life estate . . . That in the event the Court elects not to appoint a Trustee as heretofore set forth . . . [appellant] requests that this Court determine the value of her life estate and the value of the interest of the remainderman in and to said real property and the improvements thereon." The prayer of the document like-

---

[1]She also purports to appeal from orders denying her motions for new trial and to vacate the judgment. As both an order denying a new trial and an order refusing to vacate a judgment, where, as here, the grounds on which the motion to vacate was made existed prior to the entry of judgment (see *First Nat. Bank* v. *Turnbull* (1950), 99 Cal.App.2d 764, 766 [222 P.2d 494]) are not appealable, said purported appeals will have to be dismissed.

wise requested the same alternative relief. The court awarded appellant from the net proceeds of the sale (the property was encumbered in the sum of $4,419.12) $12,129.27 as the value of her life estate, and to respondent bank as testamentary trustee $25,951.61.

1. *Should the court have appointed a trustee to invest the sale proceeds?*

[██] There does not seem to be any statute in California dealing with the partition of moneys, as distinguished from real property, and particularly with moneys that come from property in which there is a life estate. Of course, there can be no life estate in moneys, so that when the property subject to the life estate is sold, the life estate, in effect, terminates. However, the holder of the life estate does not lose his interest in the moneys. The moneys are then held in trust until, at least, the interest of the former life tenant therein is determined. In the case of sale in partition of real property, there are three code sections dealing with the life tenant's interest.

Section 778, Code of Civil Procedure, provides that "The person entitled to a tenancy for life, or years, whose estate has been sold, is entitled to receive such sum as may be deemed a reasonable satisfaction for such estate, and *which the person so entitled may consent to accept instead thereof* . . ." (Emphasis added.)

Section 779 provides: "If such consent be not given, filed, and entered as provided in the last section . . . the court must ascertain and determine what proportion of the proceeds of the sale, after deducting expenses, will be a just and reasonable sum to be allowed on account of such estate, and must order the same to be paid to such party . . ."

Thus, under sections 778 and 779, had this been a sale of real property in partition, the life tenant would receive a reasonable portion of the proceeds, the amount to be determined under section 778 with his consent, or under section 779 without his consent.

However, section 781, which appears to be in conflict with sections 778 and 779,[2] provides: ". . . where property is subject to a life estate with remainder over, the court may direct the entire proceeds of the sale of such interests to be paid to a trustee to be appointed by the court . . . to be invested and reinvested, the income thereof to be paid to the

---

[2] We are still considering partition sales of real property.

life tenant and the corpus of the trust estate, upon the termination of the life estate, to be delivered or paid to the remaindermen . . .''

Sections 778, 779 and 781 were enacted in 1872. Until its amendment in 1927, section 781 provided: ''In all cases of sales, when it appears that any person has a vested or contingent *future* right or estate in any of the property sold, the court must ascertain and settle the proportional value of such contingent or vested right or estate, and must direct such proportion of the sale to be invested, secured, or paid over, in such manner as to protect the rights and interests of the parties.'' (Emphasis added.) In 1927, section 781 was amended by adding the before quoted portion concerning life estates. Thus, prior to 1927, it seemed to be the legislative intent in all three sections that as to life estates and other interests, in the event of a sale of real property under partition, the proceeds should be divided in accordance with the proportional interests.

But the later exposition of the intent of the Legislature is that set forth in section 781 as amended, namely, that in the case of a life estate, the entire proceeds of the sale should be invested by a trustee, so that the life tenant would receive the income thereof, just as, prior to sale, the income of the property went to him.

In our case, although admittedly the above-mentioned code sections apply only to sales of real property in partition, appellant contends that the court should have followed a procedure similar to that in section 781 while respondent contends it should have followed a procedure similar to that set forth in sections 778 and 779.

This proceeding was brought in the probate court, a court with broad equity powers. We see no reason why, in such a court, the life tenant in a compulsory sale should not be entitled to the same rights as in a partition sale. In fact, she should be entitled to greater consideration, for a partition of property in which there is a life estate cannot be had without the consent of the life tenant, thus giving the life tenant the control of whether there can be a partition sale, whereas in a compulsory sale she has no control whatever. It is obvious from the will of the decedent that he desired his wife to have the income from the real property for life. The property was an income-producing apartment house which netted appellant a monthly return far in excess of any return she can expect from an investment of the moneys partitioned to her in this

proceeding. The investment by a trustee of the entire proceeds of the sale and the payment of the income therefrom to appellant for life would be carrying out the desire of the testator more nearly than giving her merely the present value of her life estate in cash.

In the probate court respondent contended that if the method set forth in section 781 were adopted, the income from the investment made by the trustee would have to be divided between the life tenant and the trustee, because respondent then read that section as if it said ''the income thereof to be paid to the life tenant and [to] the corpus of the estate.'' But the section does not read that way. It reads ''the income thereof to be paid to the life tenant *and the corpus of the estate, upon the termination of the life estate, to be delivered or paid to the remaindermen . . .*'' (Emphasis added.) At oral argument of this appeal, respondent withdrew this contention, admitting that if a trustee were appointed under the section the income from the proceeds of the sale would go to the life tenant solely.

A reading of the record shows that the court was misled by this contention. It apparently considered that if a trustee were appointed and the income had to be apportioned between the life tenant and the trustee, there was no reason for not apportioning the entire proceeds at this time.

While respondent was purporting to proceed in partition under sections 778 and 779, which apply only to sales in partition of real property, appellant's petition requested the appointment of a trustee ''in accordance with the provisions of Section 781 . . .'' Her petition was actually a petition addressed to the equity powers of the court, and should have been so regarded. (See *Holman* v. *Holman* (1938), 25 Cal. App.2d 445 [77 P.2d 515], hereafter discussed, where the life tenant and the remainderman were seeking determination in an action for declaratory relief of their rights in the proceeds of a sale.) The court here should not have applied, as it apparently did, section 779. Under the court's powers a trustee to invest the moneys should have been appointed unless the court found that the interest of the remaindermen in the corpus of the trust thus established would have been endangered. The court made no such finding, and on the record could not have made such finding. While the court has a broad discretion in this matter, it is clear from the record that the court made no effort to exercise its discretion.

In any event, it would be an abuse of discretion in this

matter to deny the widow that which the testator clearly intended she should have for life, namely, the income from the real property. When, because of circumstances over which she had no control, money was substituted for the real property, it became necessary to substitute the earning power of the money for the earning power of the real property. Although appellant's petition asked that the moneys be invested in "like improved real property," something which probably would be impossible to do, that request would not preclude and should not have precluded investment in other forms of property. Even deposit in a savings bank would return the widow more than any investment she could make of the small portion of the proceeds set apart to her in the order.

Both parties rely on *Holman* v. *Holman, supra,* 25 Cal. App.2d 445. There the husband left a will in which he bequeathed the residue of his estate to his wife for life with power to sell, remainder to his son. The residue of his estate consisted principally of the real property involved in the litigation. The decree of distribution in his estate distributed one-half thereof to the widow as her own undivided one-half of the property, and a life estate in the other half with power of sale. Thereafter the widow and the son sold the real property to one Holman, who, as consideration therefor, paid the widow a certain amount in cash and deeded to her certain real property. Thereafter the widow transferred the net cash proceeds of the sale and the property deeded to her to a bank in trust, the income and such portion of the principal as the trustee deemed necessary to go to her for life, the remainder one-third to her son and two-thirds to his children.

An action in declaratory relief was brought by the son to have the trust declared invalid and to have the court apportion his and the widow's share in the proceeds of the sale. The son contended that upon the sale of the original property by the joint voluntary act of the widow and himself, the respective interests which they had in the undivided one-half of the property which was subject to the life estate,[3] terminated and thereafter as to the proceeds of the sale of said half the widow was under the duty to account to him as remainderman, and that she therefore held a portion of such consideration in trust for him. As to this contention the court said: "It is conceded that the suggestion thus advanced is novel,

[3] (Admittedly the widow could retain for herself all proceeds of the sale of the other undivided half which had been decreed to her as her share of the community property.)

that there is no authority directly supporting it, and that whatever authority there is upon the general question is contrary to the contention. Attention is called to the statement of the rule as given in Ruling Case Law and Corpus Juris. In the former the rule is thus stated: 'As a general rule, in case of a sale of the entire property, the tenant for life and the remainderman take the same interests in the proceeds, respectively, as they had in the property, the income going to the life tenant and the principal at his death to the remainderman.' (17 R.C.L., p. 646, § 38.) In the latter it is declared: 'Where the entire estate is sold there must be an apportionment of the proceeds between the life tenant and remainderman which must be based upon the value of their respective interests at the time of the sale.' (21 C.J., p. 962, § 99.)'' (Pp. 455-456.)

The court stated that the entire proceeds of the sale had, with the son's consent, been turned over to the widow, but that such fact was not indicative of an abandonment of the son's rights as a remainderman. ''There is, moreover, no occasion for attempting to work out a trust relationship between the life tenant and the remainderman in such proceeds.'' (P. 457.) The court then pointed out that the will expressly provided that the life tenant was given power of sale and that obviously it was the testator's intent that the life tenant should have the right to consume the entire estate if necessity should arise and the decree of distribution by its terms recognized the wide power granted the widow. Therefore ''It was entirely reasonable that when the land was sold the proceeds of the sale should be held and retained by the life tenant who had the undoubted right to use any part or all of such proceeds for her proper maintenance during her life. As to one-half of such proceeds she could make whatever disposition thereof she wished since by the decree of distribution such an interest had been distributed to her absolutely. As to the remaining one-half she continued to have exactly what the decree of distribution gave her which was a life estate with the power heretofore mentioned. Having the dominion and control of the entire proceeds she could unquestionably transfer to a third party all thereof but as to one-half of the proceeds such transfer would be effective only as to the interest which she held therein which was a life estate and the transferee would take only what she could lawfully convey which was a life estate. (Civ. Code, § 1108; *Hall* v. *Wright,* 17 Cal.App. 502 ·[120 P. 429] ; 16 Cal.Jur., p. 373, § 10, p. 375, § 12.) The trial

court correctly determined that upon the death of Emma Holman the respondent as remainderman was immediately entitled to have one-half of the proceeds derived from the sale . . ." (P. 457.) While the rule quoted from 21 Corpus Juris to the effect that on a sale there must be an apportionment of the proceeds between the life tenant and the remainderman, is in direct conflict with the rule quoted from 17 Ruling Case Law to the effect that on a sale the income from the proceeds goes to the life tenant and on his death the principal to the remainderman,[4] it is clear that the court followed the latter rule. This is the more sensible rule, for the reason that it carries into effect the manifest intention and desire of the testator.

In *Riley* v. *Turpin* (1956), 47 Cal.2d 152 [301 P.2d 834], a remainderman brought an action for partition of real property between himself and the life tenant. The property was sold at partition sale. In apportioning the proceeds of the sale between the parties the court followed sections 778 and 779. However, the case is of no value here for the reason that no request was made that the court follow section 781 nor was that section mentioned, the parties obviously agreeing to the court acting under the other sections.

2. *Waiver.*

Respondent contends that appellant's request to the court was in the alternative and therefore she waived any right to insist on a ruling by the court of her request for the appointment of a trustee. It is true that her request is phrased in the alternative. However, that fact does not constitute a waiver of her right to have the court rule upon the first of the alternatives. Particularly is this so, when the record discloses that at the hearing her counsel did not present her request in the alternative but only her request for the appointment of the trustee. The widow was entitled to some protection from the court of equity, at least to the extent of the court's determining, which the court did not do, whether there was

---

[4]However, in 21 Corpus Juris, immediately following the quoted language appears the following: "The usual mode of disposing of the proceeds of a sale is to award the life tenant the interest on the fund for his life, and the principal after his death to the remainderman; the life tenant not being entitled to have the value of his life estate paid to him in gross instead of the annual interest on the fund, unless the parties in interest agree to it, but the court may in its discretion divide the proceeds between the parties according to the value of their respective interests . . ." (P. 963.)

some good reason or reasons for the court not granting her first alternative.

As both appellant and the remaindermen had the same interests in the proceeds of sale that they had in the real property which was sold, appellant, unless some good reason not apparent from the record exists to the contrary, is entitled to the earning power of the proceeds of the sale, in lieu of the income she received from the rentals of the real property.

### 3. *The Apportionment.*

In view of our decision that appellant is entitled to the earnings of the proceeds of the sale, and is not required to accept the apportionment made by the court, it becomes unnecessary to consider or discuss the apportionment.

The purported appeals from the orders are dismissed. The judgment is reversed.

Tobriner, J., and Duniway, J., concurred.