**UNITED STATES of America**

**v.**

**403.15 ACRES OF LAND, More or Less, Situated IN DAVIDSON AND RUTHERFORD COUNTIES, STATE OF TENNESSEE, and Ezelle Duncan, et al.**

**Tracts Nos. 2238 and 2238E-1-2, Leachie Hall Wright, et al.**

**Civ. No. 4799.**

United States District Court, M. D. Tennessee, Nashville Division.

Aug. 27, 1970.

Robert E. Lee, Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

John K. Maddin, Jr., Gracey, Buck, Maddin & Cowan, Nashville, Tenn., for defendant Wright.

Robert W. Stevens, Fayetteville, Tenn., for defendant and cross-claimant.

OPINION

WILLIAM E. MILLER, Circuit Judge (sitting by designation).

This case, arising on a cross-claim, involves a dispute between two defendants

as to the proper disposition of a $58,500.00 monetary award made by the United States in compensation for the taking of certain tracts of land in order to facilitate the completion of the J. Percy Priest Dam and Reservoir Project. Though these tracts are more particularly and completely described in the complaint and declaration of taking entered on June 21, 1967, it suffices for present purposes to describe the land involved as three tracts numbered 2238, 2238E–1, and 2238E–2 located in the Sixth Civil District of Rutherford County, Tennessee, on the right descending bank of the Stones River at River Mile 38.

Leachie Hall Wright, an original defendant in the condemnation proceeding, held a life estate in the above described tracts, such estate having been devised to her by Item V of the will of her former husband, Sam Hall, said will having been probated and recorded in February of 1948. The Tennessee Orphans Home, having been allowed by order of this Court to enter the case as an intervening defendant and cross-claimant, also asserts an interest in the tracts by reason of the language of Item VIII in the above mentioned will of Sam Hall. Item VIII grants to the Home a remainder interest in the residue of the estate.

Prior to the time of condemnation, Defendant Wright had erected certain structures on the tracts, such structures being valued at $5,000.00. The value of these structures was included in the compensation awarded for the taking of the land.

The basic positions of the parties with regard to the disposition of the compensation award may be stated in the following manner. Defendant Wright asserts that, as a life tenant, she is entitled to a portion of the compensation award based on the present cash value of her life estate, such value being determined by reference to appropriate actuarial tables. Defendant Wright also contends that she should receive an additional sum of $5,000.00 to compensate her for the value of the structures which she erected on the condemned land.

Cross-claimants, on the other hand, contend that, while Defendant Wright is due some compensation for the condemnation of the land in which she owned a life estate, that compensation should be the amount of the income which accrues from the investment of the entire $58,500.00 award. In other words, Cross-claimants argue that, rather than apportioning the $58,500.00 fund so as to give Defendant Wright the present cash value of her life estate, it would be more proper to treat that fund as if it stood in the place of the realty, maintaining it as a whole, with the life tenant, receiving the income produced by the investment of the fund and the remainderman, having the corpus reserved in its favor. Cross-claimant, also flatly denies that Defendant Wright, as life tenant, is due any reimbursement for the value of the structures she voluntarily erected on the life estate.

There are, thus, two basic issues presented to the Court for resolution in this case. The first of these two issues may be framed as follows: Should a monetary award made in payment for land taken in a condemnation proceeding be apportioned so that the life tenant receives a portion of the award based on the value, at the time of taking, of her life estate as determined by reference to appropriate actuarial tables; or, should the entire award be invested as a whole with the income produced from such investment accruing to the life tenant while the corpus remains intact for the benefit of the remainderman? The second issue may be stated in the following manner: Should a portion of the award commensurate with the value of structures voluntarily erected on the condemned land by the life tenant be set aside for the life tenant as reimbursement for the taking of those structures?

■ In dealing with these issues, as it is empowered to do under the Federal Declaration of Taking Act, 40 U.S.C.A. § 258a, the Court is fully aware of its

duty to protect the life tenant and remaindermen in their former rights, as between themselves, insofar as it is possible for the Court to do so. *See, e. g.,* United States v. 380 Acres of Land More or Less Situated in Bullitt County, Kentucky, 47 F.Supp. 6 (D.C.Ky.1942), and United States v. 376.21 Acres of Land, Etc., 240 F.Supp. 163 (W.D.Pa. 1965). In making its determination, it is proper that the Court look to the applicable law of Tennessee as well as other jurisdictions, as that may prove necessary, and also seek to effectuate the will of the testator insofar as that is possible.

■ In approaching the first issue the Court finds that there is no Tennessee case directly in point. At first blush, it would appear that the Tennessee cases of Colcough v. Nashville and Northwestern Railroad Co., 39 Tenn. 171 (1858); Nashville, C. & St. L. Railroad Co. v. Heikens, 112 Tenn. 378, 79 S.W. 1038 (1903); Moulton v. George, 208 Tenn. 586, 348 S.W.2d 129 (1961) and, State Department of Highways and Public Works v. Texaco, Inc., 49 Tenn.App. 378, 354 S.W.2d 792 (1961), offer support for adoption of Defendant Wright's position. However, while there is general language in each of these cases which would seem to favor a disposition of the fund along lines suggested by Defendant Wright, the cases are not controlling for they deal with the interests of lessors and lessees rather than the interests of life tenants and remaindermen. It is true that there is some language in the *Heikens* case, as well as the *Colcough* case, which apparently cites with express approval the proposition that a life tenant is entitled to an apportionment of the proceeds of the condemnation award, such apportionment being measured by the injury done to the life estate. Careful reading of these old cases, however, reveals that such language was merely dictum carrying no precedential weight. Likewise, the Court is unconvinced by the language of the state court in the condemnation proceeding of Moulton v. Dawson, 215 Tenn. 184, 384 S.W.2d 233

(1964). In one facet of that case, the trial court had ordered that the proceeds of the condemnation award be apportioned between the life tenant and the remaindermen. On appeal to the Tennessee State Supreme Court, the ruling of the trial court was overturned on other grounds with no express approval or disapproval of the trial court's scheme of apportionment between the life tenant and the remaindermen since that issue was not argued by either party. Due to the lack of a holding on the issue, and the fact that the lower court decision was overturned, the *Moulton* case can certainly not be accepted by this Court as representing a tacit approval of the apportionment plan advanced by Defendant Wright.

Defendant Wright cites the case of Leach v. Dick, 205 Tenn. 221, 326 S.W. 2d 438 (1959) as authority for approval of apportionment. A close reading of the language of that decision, however, reveals nothing more than approval of the idea that a life tenant is entitled to receive some though not all of the benefit from a compensation award in a condemnation proceeding. Rather than expressly approving any apportionment plan, the *Dick* court merely concluded that the lower court had erred in awarding all of the condemnation proceeds to the life tenant and remanded the cause "for distribution of the proceeds according to the factual situation developed here." No mention of apportionment was made in the case and clearly the above quoted language could not be construed as directing such a disposition of the funds.

It being apparent that Tennessee courts have made no direct and binding determination on the question of whether a life tenant may demand an apportionment of proceeds awarded in condemnation cases, the Court concludes that it must look to the applicable case law of other jurisdictions in order to properly resolve that question.

While there are some older decisions which support Defendant Wright's contention that apportionment of the pro-

658

ceeds between a life tenant and remaindermen should take place, most of these decisions involved special circumstances. In fact, practically all cases found by the Court, with the exception of one or two,[1] awarded a sum in gross to the life tenant only where all parties consented, or pursuant to statutory authority. *See, e. g.*, Brugh v. White, 267 Ala. 575, 103 So.2d 800 (1957) (statutory authority); Dyer v. Dyer, 166 Ky. 526, 179 S.W. 453 (1915) (parties consented). Clearly, neither consent between parties nor statutory authority is present in the instant case. Therefore, such cases as those cited above are not dispositive of the issue presented here.

After a thorough analysis of all the available case law, it is apparent that where property is condemned and the question is raised as to whether or not the award should be distributed proportionally between the life tenant and the remaindermen, the great majority of courts which have considered the issue have concluded that the award stands in the place of the realty and must be maintained as a whole, with the life tenant receiving the income produced by investing the award and the corpus being reserved for ultimate distribution to the remaindermen. *See, e. g.*, Estate of Giacomelos, 192 Cal.App.2d 244, 13 Cal. Rptr. 245, 91 A.L.R.2d 956 (1961); Redevelopment Comm. of City of Greenville v. Capehart, 268 N.C. 114, 150 S.E.2d 62 (1966).[2]

Accordingly, the Court is of the opinion that apportionment of the condemnation award is not proper in the instant case. Rather, the entire amount of the award, $58,500.00 should be invested for the benefit of the life tenant, Defendant Leachie Hall Wright, and the income paid to her until her estate terminates, at which time the corpus of the award shall be distributed in accord with the appropriate provisions of the testator's will to the Tennessee Orphans Home, the remainderman.

It is the Court's opinion that this result is appropriate both in light of the case law dealing with the issue and also in light of the wishes expressed by the testator in his will. A reading of Items V, VII, and VIII of testator's will convinces the Court that the testator intended that following the expiration of Defendant Wright's life estate, the Cross-claimant remainderman was to receive the full value of the life estate. Clearly, to allow apportionment of the condemnation proceeds would result in the remainderman receiving not the full value of the estate, but rather, that value reduced by the value of the life tenant's interest at the date of the taking of the condemned property. In the Court's view, the testator did not intend any such reduction in the value of the remainderman's interest.

■■ Turning now to the remaining issue, the Court is of the view that to hold that a portion of the condemnation award ($5,000.00) should be paid to the life tenant to reimburse her for the value of structures she voluntarily erected on the condemned land, would, in effect, result in charging the remainderman with the value of those improvements. Tennessee law has long been clear on the point that, absent the necessity to erect some structure for the purpose of protecting or preserving the estate, a life tenant may not charge the remainderman with the cost of such a structure.

1. *See, e. g.*, Miller of City of Asheville, 112 N.C. 759, 16 S.E. 762 (1893); School Dist. of Columbia v. Jones, 229 Mo. 510, 129 S.W. 705 (1910). The continued validity of the above cited North Carolina case is made questionable by the case of Redevelopment Comm. of City of Greenville v. Capehart, 268 N.C. 114, 150 S.E.2d 62 (1966), where such an award was said to stand in the place of realty, and must be maintained intact, with interest to life tenant and corpus reserved to remaindermen.

2. Note also the thorough discussion of this view in 91 A.L.R.2d 966–978, §§ 3 and 4; 27 Am.Jur.2d § 252; and 29A C.J.S. Eminent Domain § 199. This view is also compatible with the view expressed by the Restatement, Property § 148, comment a.

Note the following words of the Tennessee Supreme Court which are decisive of this issue:

> If the proof had shown that this expenditure [the erection of an overseer's house] was necessary for the preservation and protection of the estate, it would have been properly allowable. But we are unable to see, from the proof, that such a necessity existed; nor do we understand, that the tenant of a temporary estate has the right to make improvements thereon, at the expense of the remaindermen, unless such expenditure is necessary for the preservation of the estate. Killebrew v. Murphy, 50 Tenn. 546, 558–559 (1870).

Note also the following language:

> It is entirely true, as a general rule, that a tenant cannot, without the concurrence of the reversioner, place improvements upon the life estate and compel the reversioner to pay for them upon the falling in of the life estate * * * Broyles v. Waddel, 58 Tenn. 32, 39 (1872).

The Court has read with interest the brief of Defendant Wright on this issue and the cases cited therein; however, the Court is unconvinced by the arguments advanced by Defendant in favor of reimbursement. It must be noted that while reimbursement for improvements to land may be granted a lessee at the termination of the leasehold by condemnation proceedings, usually such reimbursement is allowed only in instances where as against the lessor, the lessee has the right to remove such improvements prior to or upon expiration of his term. *See* Hopper v. Davidson County, 206 Tenn. 393, 333 S.W.2d 917, 920 (1960).

In the instant case, however, the Court is adjudicating a dispute between a life tenant and a remainderman and not one between a lessee and a lessor, nor is there any contention by the life tenant that she has any right to remove the structures placed on the land, nor is there any proof offered that she has suffered any special or independent injury which would militate in favor of reimbursement.[3] Accordingly, it is the position of the Court that no award can be granted to the life tenant by way of reimbursement for improvements voluntarily made to the condemned land.

3. Defendant Wright cites the case of Fisher v. Edington, 80 Tenn. 189 (1883) as authority in favor of reimbursement. In that case, the unknowing purchasers of a life estate from the original life tenant were allowed to recover the value of improvements they had made on the land since the death of the original life tenant, where such improvements had been made in ignorance of the fact that they held not a fee but only a life estate. The Court expressly upheld the general rule that a life tenant is due no reimbursement for improvements to the estate unless such were made with approval of the remainderman or to protect the estate. They did allow the good faith *purchaser* of a life estate, who mistakenly thought he had a fee simple *to recover for improvements made after the deal by the original life tenant* in order to prevent remainderman from seeking to gain the benefit of such improvements without cost by simply refraining from taking any action to prove their superior claim until such time as the purchaser of the life estate had made all such improvements to the land.

Defendant Wright also cites the case of McGinley v. Central Nebraska Public Power and Irrig. Dist., 124 F.2d 692 (8th Cir. 1942) to support reimbursement. However, the Court there issued a very narrow holding to the effect that where there were no remaindermen in esse who had any certain expectancy in relation to the land, and where the life tenant made improvements *to be used in her business which extended beyond the particular land on which they were situated,* then the life tenant could be reimbursed for the value of the improvements.