# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 1998 Session

## CLAUDIA HIBBETT BEECH v. PATRICIA HIBBETT

**Appeal from the Chancery Court for Davidson County**
**No. 97-2607-II     Carol L. McCoy, Chancellor**

---

**No. M1997-00239-COA-R3-CV - Filed July 19, 2000**

---

This appeal involves a dispute over the proceeds from the Department of Transportation's condemnation of a portion of a tract of real property on Harding Road in Davidson County. When the condemnation took place, a life tenant was occupying the property with a vested remainder interest being held by the life tenant's stepdaughter. Following a disagreement over who should receive the condemnation proceeds, the life tenant's stepdaughter filed suit in the Chancery Court for Davidson County. After the State paid the proceeds into court, the trial court awarded the proceeds to the stepdaughter on the condition that she invest them and share the investment income equally with her stepmother for the duration of the life tenancy. The life tenant has appealed. We have determined that the trial court erred by awarding the condemnation proceeds to the life tenant's stepdaughter and, therefore, reverse the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and BEN H. CANTRELL, J., joined.

James C. Hofstetter, Nashville, Tennessee, for the appellant, Patricia Hibbett.

Robert L. Hudson, Nashville, Tennessee, for the appellee, Claudia Hibbett Beech.

## OPINION

Thomas Hibbett owned a tract of real property at 711 Harding Road in Nashville. In November 1988, he prepared a will devising the property to his adult daughter, Claudia Hibbett Beech, subject to the determinable life estate of his surviving wife, Patricia Hibbett. Mr. Hibbett's will stated:

I give, devise and bequeath my house and furnishings contained therein to my daughter, Claudia Hibbett Beech, provided, however, that I direct that my wife, Patricia, (whom I also call Pasty), may reside in the house at 711 Harding Place, Nashville, Davidson County, Tennessee, rent-free until her death or her remarriage, or if she should vacate the premises as her home for any reason and provided she is not living with a man in an unmarried state. As long as my said wife is living in said home and none of the aforesaid conditions exist, she may likewise keep the furnishings, including the 46 inch television. At the time of Patricia's death, or if she remarries, or elects to live with another man without marriage, or otherwise vacates the premises as her home, the title to the house and furnishings shall immediately be vested in my daughter, Claudia, in fee simple. During her occupancy of the house, my wife shall pay the property taxes and insurance and shall maintain the premises. My wife may not sell the house or any part of the furnishings without the written permission of my daughter, Claudia.

After Mr. Hibbett died, Ms. Hibbett continued to occupy the property in accordance with the life estate her deceased husband had devised to her.

Some time after Mr. Hibbett's death, the Tennessee Department of Transportation condemned a portion of the 711 Harding Road property. While the State, Ms. Hibbett, and Ms. Beech agreed that the value of the property taken was $38,500, Ms. Hibbett and Ms. Beech could not agree on how the condemnation proceeds should be divided between them. Accordingly, Ms. Beech filed suit in August 1997 in the Chancery Court for Davidson County requesting the court to order the State to pay the proceeds into court and to then declare hers and her stepmother's rights to the proceeds. The trial court dismissed the State as a party after it paid the proceeds into court.

Once the funds were in court, Ms. Hibbett answered her stepdaughter's complaint and moved for judgment on the pleadings on grounds that the case involved only a question of law. Ms. Beech, in response, agreed that the case could be decided on the pleadings, although she contended for a result under the law different from that urged by her stepmother. In October 1997, the trial court entered an order awarding the condemnation proceeds to Ms. Beech on the condition that she invest them and divide the investment income equally with Ms. Hibbett for the duration of Ms. Hibbett's life estate. Ms. Hibbett has appealed.

**I.**

The primary issue presented by this appeal concerns the proper method for dividing the proceeds from the condemnation of a tract of real property between the life tenant[1] in possession of the property and the holder of the remainder interest.[2] Because this is a question of law, we review the trial court's decision de novo without presuming that the trial court's decision was correct. *See In re Jenkins*, 8 S.W.3d 277, 279 (Tenn. Ct. App. 1999).

When the State takes private property by eminent domain, it must pay compensation to the property's owners at the time of taking. *See* Tenn. Const. art. 1, § 21; *Federal Land Bank v. Monroe County*, 165 Tenn. 364, 367, 54 S.W.2d 716, 717 (1932). The term "owner," as used in the condemnation context,

> . . . is not to be taken in any restricted sense. The ownership of the estate, so to speak, may be severed. A life interest, or a term of years, may be carved out of the fee. And in such case the tenant for life or lessee, as well as the remainderman or lessor . . . are entitled to recover compensation for the damage or injury by them respectively sustained.

*Colcough v. Nashville & Northwestern R.R.*, 39 Tenn. (2 Head) 171, 176 (1858).

When private property is taken under eminent domain, the compensation award is substituted for the realty and is subject to division according to the same interests. *See Moulton v. George*, 208 Tenn. 586, 590, 348 S.W.2d 129, 130 (1961); *accord United States v. 2979.72 Acres of Land*, 235 F.2d 327, 329 (4th Cir. 1956); *Brugh v. White*, 103 So.2d 800, 808 (Ala. 1957); *Miller v. City of Asheville*, 16 S.E. 762, 764 (N.C. 1893); *see also generally Gallatin Housing Auth. v. Chambers*, 50 Tenn. App. 441, 452, 362 S.W.2d 270, 275-76 (1962) (indicating that a condemnation award must be apportioned between the reversioner and lessee of condemned property "according to their respective interests").

Taking of the fee in realty by eminent domain ordinarily takes all the related property interests, and following the taking those interests cease to exist. *See Holdridge v. United States*, 282 F.2d 302, 307 (8th Cir. 1960); *City of Alameda v. Todd Shipyards Corp.*, 635 F. Supp. 1447, 1450

---

[1] Under the terms of Mr. Hibbett's will, his widow has a determinable life estate. The estate may continue for the rest of her life, or it may determine -- or terminate -- during her lifetime should she (1) stop using the property as her home, (2) remarry, or (3) start living with a man without the benefit of marriage. *See Williams v. Estate of Williams*, 865 S.W.2d 3, 7 (Tenn. 1993); *Hinton v. Bowen*, 190 Tenn. 463, 468, 230 S.W.2d 965, 967 (1950).

[2] Under the will's terms, Ms. Beech holds two types of future interests. She has a traditional, straightforward remainder, which would eventually become an estate in land and would succeed her stepmother's life tenancy if Ms. Hibbett lived on the property for the rest of her life. Additionally, she has a shifting executory interest that would cause the property to pass to her during her stepmother's lifetime should her stepmother stop using the property as her home, remarry, or begin cohabiting with a man without the benefit of marriage. Ms. Beech's two interests, a remainder coupled with an executory interest, may be treated together as a vested remainder. *See* 3 *Thompson on Real Property* § 23.01(a), at 281-82 (Thomas ed. 1994).

(N.D. Cal. 1986); *Schoellkopf v. United States*, 11 Cl. Ct. 447, 450 (1987); *Patrick v. Mississippi State Highway Comm'n*, 184 So. 2d 850, 853 (Miss. 1966); *cf. Hamberger v. Hottinger*, 180 N.Y.S. 2d 197, 201-02 (Sup. Ct. 1958) (resting its like holding on New York statutory law). For that reason, it is incorrect to say, for example, that a party's life estate continues in the proceeds following a condemnation. *See In re Giacomelos' Estate*, 13 Cal. Rptr. 245, 246 (Dist. Ct. App. 1961). Rather, the owners of interests in the condemned property are entitled to share ratably in the condemnation proceeds to reimburse them for the value of their interests in the taken real property. *See United States v. 2979.72 Acres of Land*, 235 F. 2d at 329.

Where the ownership of condemned realty is divided between a life tenant and one holding a vested remainder, the condemnation award should not be merely divided between the owners and paid out. Instead, the entire amount of the award should be made available to the life tenant on specific condition that he or she invest it whole. The life tenant is thereafter solely entitled to all the resulting investment income from the award until the life estate ends naturally or determines on condition, *see Wooten v. House*, 36 S.W. 932, 935 (Tenn. Ch. App. 1895), after which the full amount of the original award must be distributed to the holder of the remainder interest. *See United States v. 403.15 Acres of Land*, 316 F. Supp. 655, 658 (M.D. Tenn. 1970); *Redevelopment Comm'n of Greenville v. Capehart*, 150 S.E.2d 62, 65 (N.C. 1966).

By allocating the rights to condemnation proceeds in this way, the law attempts to achieve some consistency between the way it treats the holders of property interests before and after their realty is, against their volition, changed into personalty. The post-condemnation rights, therefore, approximate the rights in the land. Some authorities note, with regard to land, that a life tenant is entitled to "use" of the property during the term of the life estate, *see, e.g., Forsey v. Luton*, 39 Tenn. (2 Head) 183, 186 (1858); Restatement of Property § 148 cmt. a (1936). The more detailed cases make clear, however, that in "using" the real property, the life tenant may not "encroach upon the corpus."[3] *Wooten v. House*, 36 S.W. at 935; *see also Pritchett v. Nashville Trust Co.*, 96 Tenn. 472, 477, 36 S.W. 1064, 1065 (1896).

When real property is replaced by personalty – especially in cases where the personalty is liquid, as with bonds, capital stock, or, as in this case, money – the life tenant's right to "use" of the property amounts to a right to receive the income the personalty produces. *See In re Turner*, 101 Tenn. 701, 703-04, 50 S.W. 757, 758 (1899); *Pritchett v. Nashville Trust Co.*, 96 Tenn. at 477, 36 S.W. at 1065. The life tenant cannot "use" the condemnation proceeds in the everyday sense of that word; that is, he or she cannot take the money and spend it. This limitation on the life tenant is analogous to the rule that a life tenant cannot convey or waste real property against the ultimate interests of remaindermen. *See McConnell v. Bell*, 121 Tenn. 198, 210-11, 114 S.W. 203, 206 (1908) (involving attempted conveyance); *Barber v. Westmoreland*, 601 S.W.2d 712, 716 (Tenn. Ct. App. 1980) (regarding waste).

---

[3]Although the term "corpus" is most commonly used to identify property held by a trustee, *see* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 156 (1987), in this context it means the income-generating body of a devise. *See* 14A C.J. *Corpus* at 1425 (1921).

In summary, where a condemnation award is substituted for real property that was subject to a life estate with a vested remainder, the life tenant is entitled to have and to invest the award proceeds and to receive the investment income during the period of the life tenancy. The holder of the remainder interest, while not entitled to share in the income during the life tenancy, is entitled to the undiminished corpus thereafter. That being the correct rule, the trial court erred by ordering that the condemnation award be paid to Ms. Beech with the investment income from that award to be divided equally between the Ms. Beech and Ms. Hibbett. The condemnation proceeds should have been paid over to Ms. Hibbett, and Ms. Hibbett should have been awarded all the investment income from these proceeds as long as she is a life tenant. That outcome accords with the law and effects best Mr. Hibbett's testamentary intentions.

## II.

Ms. Hibbett also takes issue with the trial court's method for dealing with disputes regarding the investment of the funds. The trial court had envisioned that the parties would agree on how the condemnation proceeds would be invested and that, if they could not agree, Ms. Beech would have the final investment authority. Ms. Hibbett asserts that the trial court should either have appointed a trustee to invest the proceeds or, alternatively, that the court should have made the investment decision itself. We reject Ms. Hibbett's argument that the trial court should have selected one or more investments for the condemnation proceeds.

While Tenn. R. Civ. P. 67 allows courts to accept funds "to abide the result of any legal proceeding," we are unaware of any power traditionally possessed by trial courts that permits them to act as investment managers for funds after the ownership and control of the funds has been fully adjudicated. Such an open-ended, unstructured role for courts would be fraught with untoward problems and would enmesh courts in areas far outside their traditional areas of competency. Accordingly, we find that the trial court properly declined to take responsibility for investing the condemnation proceeds in this case after determining the parties' respective rights to those proceeds.

Likewise, the trial court did not err by declining to appoint a trustee to manage the condemnation proceeds. By law, these funds are to be turned over to the life tenant. We note that while Ms. Hibbett is not literally a trustee for the funds, she must act responsibly toward the corpus and not diminish it. She is legally charged to deliver it intact at her tenancy's end to the holder of the remainder interest. Should she not do so, she or her estate, whichever the case may be, would have to answer. *See generally Forsey v. Luton*, 39 Tenn. (2 Head) at 186.

The record before us does not indicate the current posture of the condemnation proceeds. In the absence of a stay, we presume either that the parties have agreed upon an investment or, more

likely, that Ms. Beech has invested the proceeds.[4] We also presume that Ms. Beech, acting in her own self-interest, has attempted to maximize the return on the investment thereby benefitting not only her stepmother but also herself. Notwithstanding the propriety of Ms. Beech's investment decisions up to this point, Ms. Hibbett is now free to change the investments made by Ms. Beech and is not required to seek Ms. Beech's assent.

## III.

We reverse the judgment and remand the case with directions that the trial court enter a judgment directing that the condemnation proceeds be paid over to Ms. Hibbett. In addition, we direct the trial court (1) to require Ms. Beech to make an accounting of all the investment income earned from the time of the proceeds deposited with the court in 1997 to the date of the issuance of this court's mandate and (2) to require Ms. Beech to pay over to Ms. Hibbett an amount equal to the amount of investment proceeds Ms. Beech has received directly or indirectly. We also tax the costs of this appeal to Claudia Hibbett Beech for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[4] While the trial court's desire that the parties agree how the condemnation proceeds should be invested is well-intentioned, it is unrealistic because the parties will have conflicting views regarding the proper rate of return and risk of the investment.